# IN THE SUPREME COURT OF IOWA

No. 10–1911

Filed May 4, 2012

**ROGER B. ENNENGA,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Carla T. Schemmel, Judge.

Appellant seeks further review from a court of appeals decision affirming the district court's denial of his application for postconviction relief based on the State's alleged failure to timely file a trial information. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Gary D. Dickey of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, John P. Sarcone, County Attorney, and Jaki L. Livingston, Assistant County Attorney, for appellee.

**ZAGER, Justice**.

In this case, we must interpret a rule of criminal procedure which implements the speedy trial guarantees found in both the State and Federal Constitutions. If a defendant does not waive these rights, then Iowa Rule of Criminal Procedure 2.33 requires the court dismiss a prosecution if an indictment or trial information is not "found" within forty-five days of the defendant's arrest, unless the State can show good cause for its failure. The State inexplicably failed to file a trial information within forty-five days, and Ennenga's counsel did not file a motion to dismiss.

Thereafter, Ennenga's counsel allowed him to plead guilty. We must determine whether an indictment must be filed in order to be "found" and whether failing to ensure an indictment is timely filed amounts to the breach of an essential duty by an accused's counsel. We find that counsel breached an essential duty in failing to file a motion to dismiss the untimely trial information. This resulted in prejudice to Ennenga by his plea of guilty. We vacate the decision of the court of appeals, and the district court judgment is reversed and remanded.

## I. Background Facts.

On December 22, 2005, Roger Ennenga failed to stop his vehicle when police attempted to pull him over. Police were ultimately able to apprehend Ennenga. While taking him into custody, officers discovered a pack of cigarettes containing methamphetamine in his shirt pocket. A criminal complaint was filed on December 23 charging him with felony eluding and possession of a controlled substance—methamphetamine.[1] After an initial appearance, Ennenga was released on bond that same

---

[1]The State and Ennenga agree that he was arrested on December 23, 2005, and that February 6, 2006, is forty-five days after that date.

day and was ordered to appear on January 3, 2006. Later on December 23, the district court determined that Ennenga's bond was insufficient, increased the bond amount, and issued a warrant for Ennenga's arrest. Ennenga did not appear as ordered on January 3, 2006. Ennenga was rearrested on January 10, and his initial appearance occurred on January 11. At that time, the court scheduled Ennenga's preliminary hearing for January 20.

On January 20, the State presented Ennenga and the court with a trial information. The trial information was signed by the district court, but it does not show that it was filed with the clerk of court. The trial information charged Ennenga with one count of eluding a law enforcement vehicle in violation of Iowa Code section 321.279(3)(*b*) (2005), and one count of possession of a controlled substance in violation of Iowa Code section 124.401(5).[2] Ennenga's attorney also signed the trial information at that time acknowledging receipt of the trial information with the minutes of testimony attached. Ennenga claimed he received an unsigned copy of the trial information as well but denied receiving the minutes of testimony. The court proceeded with the arraignment at that time instead of the scheduled preliminary hearing, and Ennenga entered pleas of not guilty.[3] A pretrial conference was set for February 16, and trial was set for March 15. The arraignment order had a line which read, "On _____ a Trial Information was Filed." This blank was not filled in, indicating that at the time of Ennenga's arraignment, the State had not yet filed a trial information.

---

[2]Ennenga was arrested in December of 2005. All citations are to the 2005 Code unless otherwise indicated.

[3]Under Iowa Rule of Criminal Procedure 2.2(4)(*a*), a "defendant [shall be informed] of the right to a preliminary hearing unless the defendant is indicted by a grand jury or a trial information is filed against the defendant."

A pretrial conference was conducted on February 16. According to the pretrial conference order, Ennenga had not waived his speedy trial rights. However, the State offered to allow Ennenga to plead to the eluding charge in exchange for dismissing the possession charge. Trial remained set for March 15. The trial information was filed with the clerk of court the following day, on February 17, fifty-six days after Ennenga's arrest. On March 2, the district court approved a supplemental trial information where the State gave notice that it was charging Ennenga as an habitual offender under the provisions found in Iowa Code section 902.8. The supplemental trial information was signed by the court and filed with the clerk of court that same day. The next day, Ennenga pled guilty to the eluding charge. The possession charge and the habitual offender enhancement were dismissed. Ennenga elected to proceed to immediate sentencing, and the district court sentenced him to up to five years imprisonment, which the district court ordered be served consecutive with the sentence imposed in an unrelated case.

Ennenga filed a pro se motion to correct an illegal sentence on May 24. Ennenga included a copy of the January 20 trial information that was not signed by the prosecutor, the court, or his attorney, and that was stamped "For Defendant or Attorney." He also included a copy that was signed by the State, the court, and his attorney. Ennenga believed this second copy was filed stamped January 17 and that the difference between the two trial informations meant that his sentence was illegal. The motion was denied June 21.

Ennenga filed a second pro se motion for correction of an illegal sentence on October 19. He claimed he was denied the right to a preliminary hearing. He noted that rule 2.5(4) requires a trial information be "promptly filed" after it is approved by the court and that

the trial information was not promptly filed. The motion went on to claim that the evidence in the trial information should therefore have been inadmissible. The district court denied this motion on October 23.

Ennenga filed a number of additional pro se motions attacking what he believed was an illegal sentence. All of these motions were denied by the court. On April 5, 2007, Ennenga filed a notice of appeal. The appeal was dismissed on February 14, 2008, and procedendo was issued on February 25.

Meanwhile, on February 19, 2007, Ennenga requested assistance of counsel for the preparation of an application for postconviction relief (PCR). On December 21, 2007, Ennenga filed an application for appointment of PCR counsel. Counsel was appointed January 16, 2008.

Ennenga filed an application for PCR on September 4, 2009, and counsel filed an amended application on November 23.[4] He alleged that his trial counsel was ineffective because he allowed Ennenga to plead guilty on March 3, 2006, rather than filing a motion to dismiss the charges based on the State's failure to file the trial information within forty-five days as required by Iowa Rule of Criminal Procedure 2.33(2). The State conceded Ennenga was arrested on December 23, 2005, the speedy indictment deadline ran on February 6, 2006, and the trial information was filed on February 17. However, the State noted the

---

[4]The State notes that Ennenga's application was filed more than three years after his conviction became final on March 3, 2006, and claims it is doubtful that Ennenga's appeal and his other motions following the guilty plea would "extend the deadline for filing a PCR application challenging his conviction." *See* Iowa Code § 822.3 (requiring all PCR applications be filed within three years from the date of the conviction or final decision, or in the event of an appeal, three years from when procedendo is issued). We make no comment on the merits of this argument since, as the State notes, this issue was not raised at the district court, and the State has not pursued this claim on appeal. *See Schrier v. State*, 573 N.W.2d 242, 244–45 (Iowa 1997) (holding that an applicant's failure to file a PCR within three years deprives the court of authority to hear a case, but that a lack of authority can be waived by the State).

presiding judge approved the trial information on January 20, and Ennenga and his counsel were provided with a copy of the trial information that same day. Accordingly, the purpose of the speedy indictment rule was served, and the failure to file was merely "a clerical error, nothing more."

The district court found

> Ennenga's failure to appear and second arrest provide good cause for the delay in having the trial information signed within forty-five days of his first arrest. This is particularly true where Ennenga received a copy of the signed trial information setting out the charges against him within the forty-five days of his first arrest, and where he was afforded a speedy trial, which he waived by pleading guilty. This good cause excuses the technical failure to file the trial information within forty-five days of Ennenga's first arrest and thus cannot give rise to the basis for ineffective assistance of counsel.

The district court then dismissed Ennenga's application for PCR. Ennenga timely appealed. We transferred the case to the court of appeals which affirmed the district court. Ennenga applied for further review, which we granted.

## II. Standard of Review.

Under both the State and Federal Constitutions, ineffective-assistance-of-counsel claims are reviewed de novo. *State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008); *Hannan v. State*, 732 N.W.2d 45, 50 (Iowa 2007). Though rulings on postconviction relief are usually reviewed for a correction of errors at law, when an applicant asserts a constitutional claim as the basis for postconviction relief, we review that claim de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III. Discussion.

We have summarized the applicant's burden when making an ineffective-assistance-of-counsel claim in the PCR context as follows:

> "To prove ineffective assistance of counsel, the appellant must show that (1) counsel failed to perform an essential duty, and (2) prejudice resulted." There is a presumption the attorney acted competently, and prejudice will not be found unless there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Hannan*, 732 N.W.2d at 50 (citations omitted). Ennenga must prove both the "essential duty" and "prejudice" elements by a preponderance of the evidence. *State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011).

**A. Failure to Perform an Essential Duty: Counsel's Failure to Protect Ennenga's Speedy Trial Rights.** The Iowa Constitution guarantees an accused the right to a speedy trial. Iowa Const. art. I, § 10. Since 1851, the legislature has implemented this guarantee by requiring the court to dismiss a criminal prosecution when the State fails to indict an accused in a timely manner, unless the State can show good cause for that failure. Iowa Code § 3248 (1851). The legislature reaffirmed its commitment to this principle in 1976, which was the same year the legislature authorized this court to promulgate changes to the rules of criminal procedure. *See* 1976 Iowa Acts ch. 1245(2), § 1301, rule 27(2)(a) (now codified at Iowa R. Crim. P. 2.33(2)(*a*)) (requiring dismissal if an indictment is not found within forty-five days of arrest unless good cause for the failure is shown); *id.* ch. 1245(4), § 530 (authorizing this court to propose changes in the rules of criminal procedure). This basic constitutional guarantee is currently implemented by Iowa Rule of Criminal Procedure 2.33(2)(*a*), which provides:

> When an adult is arrested for the commission of a public offense, . . . and an indictment is not found against the defendant within 45 days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives the defendant's right thereto.

"A dismissal for failure to provide a speedy trial is an 'absolute dismissal, a discharge with prejudice, prohibiting reinstatement or refiling of an information or indictment charging the same offense.'" *State v. Abrahamson,* 746 N.W.2d 270, 273 (Iowa 2008) (quoting *State v. Johnson,* 217 N.W.2d 609, 612 (Iowa 1974)).

The failure of an accused to affirmatively assert his speedy trial rights does not amount to a waiver of those rights. We addressed this issue in *State v. Gorham,* 206 N.W.2d 908 (Iowa 1973), where we noted:

> "The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process."

206 N.W.2d at 911 (quoting *Barker v. Wingo,* 407 U.S. 514, 527, 92 S. Ct. 2182, 2190, 33 L. Ed. 2d 101, 115 (1972)).

Ennenga was arrested on December 23, 2005. The parties agree that February 6, 2006, was the forty-fifth day after arrest. According to the February 16, 2006, pretrial conference order, Ennenga had not waived his speedy trial rights at that time. The State did not argue that a not guilty plea amounts to a waiver of an accused's speedy indictment rights and has not provided any authority to support the proposition that a defendant waives his speedy indictment rights by entering a plea of not guilty at arraignment. We conclude that Ennenga did not waive his speedy indictment rights and preserved his rights under rule 2.33.

In *Utter,* we reviewed an ineffective-assistance-of-counsel claim that arose out of an attorney's failure to file a motion to dismiss based on the State's failure to comply with the forty-five day speedy indictment

rule. 803 N.W.2d at 650. We noted that attorneys have a duty to provide reasonably competent representation. *Id.* at 653. We then held that

> to provide reasonably competent representation when a criminal defendant asserts his or her speedy trial rights, counsel must ensure that the State abides by the time restrictions established in Iowa Rule of Criminal Procedure 2.33. Counsel's failure to do so amounts to a failure to perform an essential duty.

*Id.* If Ennenga's attorney did not ensure that the State abided by rule 2.33, and allowed his client to plead guilty to charges that could have been dismissed with prejudice, then he failed to perform an essential duty.[5] *Id.* We now turn to the question of whether counsel ensured the State complied with the rule.

Rule 2.33(2)(*a*) requires a prosecution be dismissed if an indictment is not "found" within forty-five days of arrest, unless good cause is shown or the defendant waives the right to a speedy indictment. The indictment can be in the form of a trial information. Iowa R. Crim. P. 2.5(1) ("All indictable offenses may be prosecuted by a trial information . . . ."); *id.* r. 2.5(5) ("The term 'indictment' embraces the trial information."). As noted above, Ennenga did not waive his right to a speedy indictment. The remaining issues, then, are whether an

---

[5]The State argues that the true question in this case is:

> Would a reasonably competent attorney applying "prevailing professional norms" double check with the clerk of court in every case that the trial information has been file stamped within forty-five days when the trial information was approved, a copy provided to counsel, and the defendant arraigned within the speedy indictment period?

This question frames the issue too narrowly. *Utter* states that providing reasonably competent representation requires an attorney to "ensure that the State abides by the time restrictions established in Iowa Rule of Criminal Procedure 2.33." 803 N.W.2d at 653. The reason counsel failed to ensure the State followed rule 2.33 was not relevant in *Utter* and is not relevant here. Because Ennenga did not waive his speedy trial rights, if counsel failed to ensure the State followed rule 2.33, then counsel failed to perform an essential duty.

indictment was timely "found" under the rule and, if not, whether the State has shown "good cause" for the delay.

1. *When is the indictment "found?"* We held in *State v. Schuessler*, 561 N.W.2d 40 (Iowa 1997), that "to make sense of the term 'found' in rule [2.33(2)] for . . . trial informations we believe it must be interpreted to mean approved *and* filed." 561 N.W.2d at 42. We also held that "the file date is the date by which to determine whether an indictment has been 'found' within forty-five days of defendant's arrest for purposes of rule [2.33(2)]." *Id.* Ennenga points to *Schuessler* and claims the trial information should not be considered "found" until February 17, the date it was filed. The State argues that this case is distinguishable from *Schuessler* because the purposes of the speedy trial rule were still served in this case because the trial information was both approved by the court and *given to* the defendant within forty-five days. The State argues that in light of these facts, the trial information should be considered "found" before it was filed.[6]

The State also argues that "[t]his court should consider the trial information 'filed' when it was presented on January 20, 2006," and that "[t]he trial information should be regarded as filed on January 20, 2006, when the district court approved the trial information, defense counsel received a copy of the trial information, and Ennenga was arraigned on the trial information." The State does not dispute that the file stamp on the trial information was dated February 17, 2006, and it does not claim that an error was made by the clerk in stamping the file with that date. Instead, the State argues that we should *consider it filed* or *regard it as filed* on January 20. We find no merit in this claim and decline to adopt

---

[6]In the brief to the district court, the county attorney "concede[d] the Trial Information was not filed with the Clerk of Court timely."

the State's interpretation of the word "filed" and will "consider" and "regard" the trial information as having been filed when it was in fact filed, on February 17.[7]  We will, however, take the facts listed above into account when determining whether the trial information could be considered "found" before it was filed.

As we have noted, a defendant must be indicted within forty-five days of arrest.  We have explained the purposes of the speedy trial rule as follows:

> The purpose of both the criminal procedural rules and the constitutional provisions is to "relieve an accused of the anxiety associated with a suspended prosecution and provide reasonably prompt administration of justice."  The speedy indictment and speedy trial rules also aim to prevent the harm that arises from the "possible impairment of the accused's defense due to diminished memories and loss of exculpatory evidence."  This type of harm is the "most serious," because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system."

*State v. Wing*, 791 N.W.2d 243, 246–47 (Iowa 2010) (citations omitted).

In *Schuessler*, we were confronted with the situation where the trial information had been approved by the court on the forty-fifth day after arrest, but it was not filed until the forty-sixth day.  561 N.W.2d at 41.  The State argued that the trial information should be considered "found" when it is approved by the court.  *Id.*  We disagreed, stating,

> We believe the State's interpretation would frustrate the purpose of rule [2.33](2) that "criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties" because an indictment could be "found"

---

[7]Both the file stamp on the trial information itself and the district court's docket entry show that the trial information was filed on February 17.  The fact that the arraignment form contained a line reading "On _____ a Trial Information was filed" does not lead us to conclude that a trial information was filed as of Ennenga's January 20 arraignment.  This portion of the form was not filled in, and we do not believe that a blank line on an arraignment form indicates that the court found that a trial information had in fact been filed.  This blank line also does not indicate in any way that a trial information was filed at the time of arraignment.

> even though there is no record of the information on file with the clerk's office and therefore no notice to defendant. We have stated that "[t]he purpose of an indictment or information is to apprise the defendant of the crime charged so that the defendant may have the opportunity to prepare a defense." We believe this purpose is best accomplished by requiring that an indictment is filed before it is considered to be "found."

*Id.* (citations omitted). In this case, Ennenga received the trial information on January 20, which is within the forty-five day window. This fact makes this case different than *Schuessler*, and the State claims this difference is dispositive.

The State argues that *Schuessler* required filing in order to give notice to the defendant. Since Ennenga was given notice, filing within forty-five days was not necessary to consider the information "found." Allowing the trial information to be "found" when it has not yet been filed, but has been provided to the defendant, may serve the purpose of informing the defendant of the charges against him and allowing him to prepare a defense. *See id.* However, there are several problems with interpreting the word "found" to be synonymous with "approved and given to the defendant" instead of "approved and filed." The most obvious problem is that the language in our prior cases says otherwise. *E.g., Utter*, 803 N.W.2d at 653 ("The State did not indict Utter until June 12, eighteen days later, *when it filed its trial information.*" (Emphasis added.)).

We are not alone in interpreting the word "found" to include filing. In a similar context, the legislature has explicitly interpreted the word "found" to require filing. Iowa Code chapter 802 imposes rigid deadlines for the prosecution of criminal actions, much like rule 2.33(2)(*a*) imposes rigid deadlines for indictments and informations. That chapter

specifically states, "An information is found when it is filed." Iowa Code § 802.8(2).

Interpreting "found" as to not mandate filing would be contrary to the plain language of the rules governing trial informations. The trial information is defined in detail in rule 2.5. The information must be endorsed by the prosecuting attorney and contain minutes of the evidence to be presented. Iowa R. Crim. P. 2.5(2), (3). It must be approved by a judge "[p]rior to the filing of the information." *Id.* r. 2.5(4). If the information contains sufficient evidence upon which a trial jury could convict, "the judge or magistrate shall approve the information *which shall be promptly filed.*" *Id.* (emphasis added). The plain language of this rule indicates that a trial information should be both approved and filed before it can be considered "found."

Rule 2.8, which governs arraignments, states, "The defendant shall be *given a copy* of the indictment or information before being called upon to plead." *Id.* r. 2.8(1) (emphasis added). In this case, the State complied with this rule and provided Ennenga with a copy of the information at the arraignment. The State argues that providing Ennenga with a copy of the information serves the purpose of the speedy indictment rule. However, the State was required to take this step under rule 2.8(1). Complying with rule 2.8 does not excuse noncompliance with rule 2.33.

The interpretation that an indictment must be filed in order to be found is supported by past legislative enactments. In 1976, the legislature revised Iowa's criminal procedure laws. *See* 1976 Iowa Acts ch. 1245(2), §§ 101–1905. Section 1301 of this revision contained the last comprehensive set of rules of criminal procedure drafted completely by the legislature, as opposed to this court, which was given the authority to propose rule changes that same year. 1976 Iowa Acts ch.

1245(2), § 1301; *id.* ch. 1245(4), § 530. The statutory rules enacted by the legislature in 1976 required the court to dismiss a prosecution if an indictment was not found within forty-five days of arrest. 1976 Iowa Acts ch. 1245(2), § 1301, r. 27(2)(a) (now codified at Iowa R. Crim. P. 2.33(2)(*a*)). That same act made all indictment rules applicable to trial informations. *Id.* at r. 5(5) (now codified at Iowa R. Crim. P. 2.5(5)). In that very same legislative enactment, the legislature also included a provision that stated, "An information is found when it is filed." *Id.* § 208(2) (now codified at Iowa Code § 802.8(2)). These provisions, which were all contained in a single legislative enactment, show that the last time the legislature addressed this issue, it would have concluded, as we have concluded in the past, that an information is not found until it is filed.

Absent a showing of good cause, rule 2.33(2)(*a*) requires the court to dismiss a prosecution when an indictment is not found within forty-five days of arrest. The word found has been consistently interpreted by both the courts and the legislature to require filing. *See Schuessler*, 561 N.W.2d at 42; *see also* Iowa Code § 802.8(2). Based on the plain language of the rules governing trial informations, our own precedent, and the language found in similar statutes, we continue to adhere to the objective and consistent rule that in order to be found under rule 2.33(2), a trial information must be both approved and filed. Since there is uncontroverted evidence that the trial information was approved on January 20 and filed on February 17, we therefore conclude the information was found on February 17.

We recognize that this was a short delay, and Ennenga has not shown or claimed he was prejudiced by the delay. While other procedural rules may require a showing of prejudice, rule 2.33 does not.

*Cf. State v. Braun*, 495 N.W.2d 735, 741 (Iowa 1993) (noting that a defendant must show his rights were prejudiced in order to show a violation of rule 2.4(8)(*a*) had occurred). As we noted in *State v. Sassman*, 226 N.W.2d 808 (Iowa 1975):

> The time lag involved here is insignificant, and defendant made no attempt to show he was prejudiced thereby. However, it is not necessary that he do so. We have said that the State cannot excuse its failure to comply with the statute by showing it was violated only a little bit. Like all limitation statutes, [the speedy indictment rule] has an arbitrary deadline. The State may avoid its impact only by showing good cause for the delay.

226 N.W.2d at 809 (citations omitted). The length of delay and the lack of prejudice have no bearing on whether a trial information was timely "found."

However, factors such as the length of delay and the lack of prejudice to the defendant bear on the question of whether there was "good cause" for the State's failure to properly "find" the information. *See Schuessler*, 561 N.W.2d at 42 (noting that if the delay is short and the defendant is not prejudiced by it, then a weaker reason will constitute good cause). We now turn to the question of good cause.

2. *Was there good cause for the delay?* At this point, it is helpful to acknowledge the procedural posture in this case. We must determine whether Ennenga has shown his counsel failed to perform an essential duty. Ennenga bears the burden of proof on this point and therefore must demonstrate a failure to perform an essential duty by a preponderance of the evidence. *Ledezma*, 626 N.W.2d at 142. Our case law has established that failing to ensure the State abided by the time restrictions found in rule 2.33(2) is a failure to perform an essential duty. *See Utter*, 803 N.W.2d at 653. We have already established that Ennenga asserted his speedy trial right and that an indictment was not "found"

within forty-five days of arrest. Thus Ennenga must now show, by a preponderance of the evidence, that if this issue had been raised in the original proceeding, that the State would have been unable to bear *its* burden by establishing good cause for the failure to file the information within forty-five days. *See State v. Petersen*, 288 N.W.2d 332, 334 (Iowa 1980) (noting the State bears the burden of showing good cause for the delay when speedy trial deadlines have not been met). In other words, to succeed on his PCR claim, Ennenga must show by a preponderance of the evidence that the State could not have shown good cause for the delay. *Utter*, 803 N.W.2d at 652 (noting the burden of proof in an ineffective-assistance-of-counsel case is a preponderance of the evidence). The district court determined Ennenga had not met his burden and denied his application, a determination we review de novo. *See Ledezma*, 626 N.W.2d at 141.

Our case law recognizes "the singular importance of the reason for delay in testing good cause." *Petersen*, 288 N.W.2d at 335; *see also State v. Miller*, 637 N.W.2d 201, 205 (Iowa 2001) ("We have repeatedly said that, under our rule, good cause 'focuses on only one factor: the reason for the delay.'" (citation omitted)). Factors such as the length of delay, the defendant's failure to demand a speedy trial, and the prejudice caused by the delay all impact whether good cause exists to excuse the late finding of a trial information. *Petersen*, 288 N.W.2d at 335; *see also Schuessler*, 561 N.W.2d at 42. However, if the reason for the delay is insufficient, other factors will not avoid dismissal. *Schuessler*, 561 N.W.2d at 42.

We have held that the unavailability of a judge on Sunday, the day before the forty-fifth day after an arrest, does not constitute good cause. *Id.* Also, a mistake in calculating the forty-fifth day from arrest does not

constitute good cause. *State v. Hunziker*, 311 N.W.2d 692, 693–94 (Iowa Ct. App. 1981). Our precedents disfavor allowing generalized clerical difficulties to qualify as good cause for a delay. For example, we have found that a "shortage of secretarial help in the county attorney's office" will not constitute good cause. *Sassman*, 226 N.W.2d at 809. We have also noted that "[w]hen the State contends 'court congestion' is the reason for delay, the trial court must distinguish between chronic court congestion and specific circumstances arising out of unique, non-recurring events which create a particular scheduling problem." *State v. Bond*, 340 N.W.2d 276, 279 (Iowa 1983). Thus, our focus is on the reason for the delay and how that specific reason justifies departure from the speedy trial rules. *See Miller*, 637 N.W.2d at 205–06.

There are many situations where we have found a departure from Iowa's speedy trial rules to be justified. For example, in *State v. Hathaway*, 257 N.W.2d 735 (Iowa 1977), we found good cause for the delay in filing a trial information existed when all judges were out of town on the required filing day. 257 N.W.2d at 736–37. In *State v. Moritz*, 293 N.W.2d 235 (Iowa 1980), we found that the district court did not abuse its discretion in determining that "the complexity of the multiple motions filed by [the defendants] and the county attorney's participation in the prosecution of a separate, related case during the time in question" constituted good cause for delay. 293 N.W.2d at 241. Also, an "honest misunderstanding" can constitute good cause when "[t]he prosecutor reasonably believed that the defendant's attorney wanted the case continued and was to file a motion for continuance." *Petersen*, 288 N.W.2d at 335. We note that in each of these situations, the reason given for the delay in some way contributed to the speedy trial deadline being missed and the asserted "good cause" was specific to the case as

opposed to a generalized, unattributed difficulty. We now turn to the question of whether the State's reasons offered in this case constitute good cause for the delay.

> When a speedy trial claim comes before this court on direct review,
>
> > [w]e review a trial court's ruling on a motion to dismiss based on speedy-trial grounds for an abuse of discretion. However, that discretion is a narrow one, as it relates to circumstances that provide good cause for delay of the trial.

*State v. Campbell,* 714 N.W.2d 622, 627 (Iowa 2006) (internal citation omitted). This case, however, does not come before us on a direct review. This is a postconviction relief action where the applicant claims he was denied the effective assistance of counsel because counsel failed to move to dismiss. As stated above, we review constitutional ineffective-assistance-of-counsel claims brought on postconviction relief de novo. *Ledezma,* 626 N.W.2d at 141. Therefore we are not bound by the district court's resolution and will make our own, independent determination as to whether the State's reasons for the delay would constitute good cause.

As the State notes, "the district court found Ennenga's failure to appear and second arrest from the resulting bench warrant provided a good reason for the delay." However, the warrant for Ennenga's second arrest was issued on December 23, 2005, the same day he was originally released on bond. The warrant was issued because the "[b]ond posted [was] insufficient." The arrest warrant was served on January 10, seven days after Ennenga failed to appear for the preliminary hearing that was scheduled when he was released on bond on December 23.

Our cases make clear that in order to constitute good cause, we must be satisfied that "the reason given justifies departure from the rule." *Miller,* 637 N.W.2d at 205. We fail to see how Ennenga's second arrest and failure to appear on January 3 justify the State's failure to file

the trial information by the February 6 deadline. Filing a trial information did not require Ennenga's approval or participation. *See* Iowa R. Crim. P. 2.5 (requiring the signature of the prosecuting attorney and approval of a judge or magistrate before a trial information is filed, but not requiring the accused receive a copy). The trial information was prepared and approved by the trial judge on January 20. The State has not offered any explanation how Ennenga's failure to appear seventeen days earlier caused or contributed to the untimely filing of the trial information. This explanation does not justify the State's failure to file the trial information that was approved on January 20 and therefore does not constitute good cause for the delay.

The State's second justification for the delay was that it was the result of "an inadvertent clerical error." This alleged reason is more of a description of the delay than a reason for it. We would assume that the State would not intentionally wait beyond the forty-five day deadline. The State has not gone into more detail regarding the nature of the "clerical error" or what caused it. We cannot conclude that a mere clerical error would constitute good cause. *See Sassman*, 226 N.W.2d at 809 (holding that a shortage of secretarial help in the county attorney's office does not constitute good cause for delay); *see also Hunziker*, 311 N.W.2d at 693–94 (holding that a mistake in calculating the forty-fifth day from arrest does not constitute good cause). This ground would not have justified the failure to timely file the trial information.

We recognize that while Ennenga demanded his speedy trial rights, he has not suffered any actual prejudice from the State's failure to comply with rule 2.33. We also note he was made aware of the charges against him within the forty-five day period mandated by the rule, and we recognize that the trial information was filed only eleven days after the

forty-five day timeline expired. These considerations would have allowed "a weaker reason [to] constitute good cause." *Petersen*, 288 N.W.2d at 335. Ennenga has not provided a reason for the delay in filing, but he has rebutted the only two grounds offered by the State as good cause for the delay. Since the State has not put forth *any* credible reason for the delay, we are convinced by a preponderance of the evidence that the State could not have shown good cause for the delay had this issue been raised prior to Ennenga's plea. *Utter*, 803 N.W.2d at 653; *Petersen*, 288 N.W.2d at 334.

Ennenga asserted his speedy trial rights. A trial information was not "found" within forty-five days and, had the issue been raised in the original proceeding, the State would not have been able to show good cause. By failing to raise the issue before the district court, Ennenga's trial counsel failed to assure the State abided by the time restrictions found in rule 2.33. Accordingly, counsel failed to perform an essential duty. *Utter*, 803 N.W.2d at 653. We now turn to the question of prejudice.

**B. Prejudice.** "To prove prejudice resulted from trial counsel's failure to perform an essential duty, an accused must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 654 (citation omitted). To show prejudice, Ennenga "must establish that 'but for counsel's breach of duty, [he] would not have pled guilty.'" *Id.* (citation omitted).

The State violated the speedy indictment rule. Had this issue be raised before the district court in the original proceeding, the prosecution for eluding and for possession of methamphetamine would have been dismissed. Iowa R. Crim. P. 2.33(2)(*a*). A dismissal under rule 2.33

would create an absolute bar to further prosecution for these offenses. *See Utter*, 803 N.W.2d at 654. Counsel could have filed a successful motion to dismiss any time after February 6. We find that Ennenga would not have pled guilty on March 3 if he had known that the court would have been required to dismiss the charges under rule 2.33(2)(*a*). Therefore, his plea was not voluntary or intelligent. *Id.* at 655. "Thus, a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

## IV. Disposition.

Ennenga's counsel failed to perform an essential duty which resulted in prejudice to the client. Accordingly, Ennenga's PCR application should have been granted. We vacate the decision of the court of appeals and reverse the decision of the district court. We remand the case to the district court with instructions to grant the PCR application, vacate the guilty plea, and dismiss the trial information according to rule 2.33(2)(*a*).

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Cady, C.J., and Mansfield and Waterman, JJ., who dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. Although I agree with some of the majority's analysis concerning rule 2.33(2)(*a*), I believe the trial information in this case was effectively filed on January 20, 2006. I also believe that the defendant, by *pleading to* the trial information within forty-five days of arrest, necessarily waived any violation of the speedy indictment rule. Finally, even if a technical violation of the speedy indictment rule did occur, I am unable to conclude on this record that trial counsel breached an essential duty.

### I. Filing of the Trial Information.

On January 20, 2006, Roger Ennenga and his trial counsel appeared in court for a scheduled preliminary hearing. The prosecutor handed a trial information to Ennenga and his counsel. The district court approved the sufficiency of the trial information and signed it. That same day, the district court entered an arraignment order indicating Ennenga had waived formal arraignment and pled not guilty. The order included pretrial conference and trial dates. The order further stated that "*a Trial Information was Filed*" (emphasis added).[8] However, the trial information itself did not reach the court file until February 17, 2006.

In short, we have a combination of two circumstances: (1) an entry on a document in the clerk's office signed by a judge stating that the trial information was filed, and (2) actual receipt by all parties and counsel of the actual trial information. Given these two facts, I would find that a

---

[8]As noted by the majority, the arraignment order simply said that a trial information "was Filed", but the date of filing was not filled in. Nonetheless, the order itself was file-stamped January 20. A reader would logically conclude that the trial information had been filed as of the date of the order, but the filing date had simply not been filled in.

filing occurred. "The starting point to interpret the speedy-indictment rule begins with the context in which the rule was conceived." *State v. Wing*, 791 N.W.2d 243, 254 (Iowa 2010) (Cady, J., dissenting) (citations omitted). The speedy indictment rule and the speedy trial rule are intended to work in tandem. Both rules center on the date when the indictment is "found." *See* Iowa R. Crim. P. 2.33(2)(*a*)–(*b*). That is the date when speedy indictment requirements end and speedy trial requirements begin. Here that transition occurred on January 20.[9]

This is not a case like *State v. Schuessler*, 561 N.W.2d 40 (Iowa 1997). There the defendant had been cited in lieu of arrest for traffic violations, he was not in custody, and there was no preliminary hearing. *Id.* at 41. On the forty-fifth day, the State obtained approval from the court for its trial information, but it did not file it until the forty-sixth day. *Id.* at 41, 43. As we noted, there was "no record of the information on file with the clerk's office and therefore no notice to defendant" until at least the forty-sixth day. *Id.* at 42. Here, by contrast, the clerk's file stated that a trial information had been filed and both Ennenga and his counsel had it.

**II. Waiver.**

Rule 2.33(2)(*a*) also provides that the speedy indictment rule can be waived. It does not specify what is required for a waiver. *See State v. Finn*, 469 N.W.2d 692, 693–94 (Iowa 1991) (finding that a defendant waived his speedy indictment rights by initially executing a waiver in order to participate in the deferred prosecution program and, when he changed his mind and notified the prosecution he was not going to enter

---

[9]Rule 2.33 also needs to be read together with rule 2.2(4)(*a*), which indicates that the *filing* of the information cuts off a defendant's right to a preliminary hearing. *See* Iowa R. Crim. P. 2.2(4)(*a*). Here the court and the parties proceeded on the basis that the right to a preliminary hearing no longer existed as of January 20.

the program, by failing to reassert those rights). I would find that such a waiver occurred here. When the defendant enters a plea to the trial information within forty-five days of his arrest, it is illogical to argue that his speedy indictment rights have been violated. Not only did he receive the trial information; he entered a plea to it. Here every goal sought to be accomplished by the speedy indictment rule was in fact accomplished by the Polk County protocol followed by the parties in this case. Importantly, no additional time was added to the proceedings by the State's apparent failure to hand-carry the trial information from the judge's courtroom to the clerk's office. Otherwise stated, the State's failure to subsequently timely file a trial information was a nonevent, totally irrelevant to the prosecution or defense of the case.

### III. Breach of Essential Duty.

Even if we were confronted with a violation of rule 2.33(2)(*a*) in hindsight, that would not resolve this case. In order to decide that Ennenga received ineffective assistance of counsel, we would have to find that his counsel "failed to perform an 'essential duty'" by making " 'errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *State v. Lyman*, 776 N.W.2d 865, 877–78 (Iowa 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)). Trial counsel's performance is measured objectively by determining whether "counsel's assistance was reasonable, under prevailing professional norms, considering all the circumstances." *Id.* at 878. "Establishing the first prong is not easy because ' "there is a strong presumption trial counsel's conduct fell within the wide range of reasonable professional assistance." ' " *Id.* (quoting *State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003)).

Thus, assuming for the sake of argument that my colleagues correctly interpreted rule 2.33(2)(*a*), we still must determine whether Ennenga's trial counsel violated prevailing professional norms when he relied on his receipt of the trial information, its approval by the district court, and the district court's arraignment order without verifying whether the trial information was actually filed in the clerk's office. That is a crucial issue for me, and it is not addressed in the majority opinion.

Ennenga's trial counsel had twenty-two years of experience working as an assistant county attorney and an assistant public defender. He testified in the postconviction relief proceeding as follows:

> Q. Is it unusual to receive—at least in Polk—to receive a copy of the Trial Information that is neither signed nor file stamped? A. No, not at the preliminary hearing stage. When we come to a preliminary hearing and there has been a Trial Information prepared, normally we wouldn't have a signed and file stamped copy.

> Q. And why is that, if you know? A. Just volume of cases.

> Q. Would you have assumed that there was a signed and file stamped copy? A. Yes.

> Q. Do you have any procedures set up to go into the Clerk of Court's office and check that out and verify it? A. No.

> . . . .

> Q. And it's standard procedure, wouldn't it be fair to say, that we function in terms of the filing of Trial Informations by practice? The expectation is the judge signs it, it gets filed with the Clerk like it's supposed to, correct? A. Yes.

> Q. And it's not practice that you go to the Clerk's Office every time or look on ICIS every time to make sure—or even most times to make sure that the Trial Information has, in fact, been filed with the Clerk of the Court? A. That's correct. And at that point I don't think I would have had access to ICIS back in '06. I could be wrong, but—

> . . . .

Q. As far as you know, what information would Mr. Ennenga have been—would he have received regarding his Trial Information as to when it was signed or file stamped? A. I don't know. I would assume he would have just made the same assumption I did when he was presented with that on January 20th. I presume that it would have been his assumption that it was filed on that date.

Q. So as an attorney you would not have seen the need to pursue this issue? A. No.

Of course, it is possible that reasonable professional standards would require defense counsel to check the file (or the electronic docket, if one was available then) to verify the date when the information was actually filed, even when: (1) defense counsel received a copy of the information in court, (2) defense counsel was aware the district court approved the information, and (3) the arraignment order indicates an information was filed. But we are not in a position to decide that question as a matter of law. And the district court never reached this issue because its interpretation of rule 2.33(2)(*a*) did not require it to. Accordingly, even if I fully agreed with the majority's interpretation of rule 2.33, I would remand for the district court to decide whether Ennenga's trial counsel failed to perform an essential duty by not double-checking the court file.

The majority sidesteps the "essential duty" inquiry by citing *State v. Utter* for the proposition that defense counsel has an absolute duty to "ensure that the State abides by the time restrictions established in Iowa Rule of Criminal Procedure 2.33." 803 N.W.2d 647, 653 (Iowa 2011). This disregards our considerable body of ineffective-assistance law and takes *Utter* out of context. In *Utter*, the State did not present a trial information within the forty-five day deadline. *Id.* We held counsel's failure to raise this obvious speedy indictment violation was not " 'reasonable, under prevailing professional norms.' " *Id.* at 652–53

(citation omitted). Here, however, the State provided Ennenga's counsel with a trial information, the district court approved (and signed) it, and Ennenga was even arraigned within forty-five days. It is true that for some unexplained reason the State failed to file the information. Yet the relevant question is not whether Ennenga's trial counsel was ineffective in failing to *raise* an obvious speedy indictment violation, but whether he was ineffective in failing to *discover* a nonobvious speedy indictment violation. The record here suggests that Ennenga's trial counsel would have identified the alleged speedy indictment defect only if he went beyond common practice and anticipated clerical error. This presents a different question of professional competence than *Utter*.

The majority errs in reading *Utter* as imposing an absolute duty on defense counsel to ensure compliance with rule 2.33. According to the majority: "The reason counsel failed to ensure the State followed rule 2.33 . . . is not relevant . . . ." By this standard, no matter what precautions defense counsel took, if the information was not filed on the forty-fifth day, ineffective assistance has been established as a matter of law and the defendant goes free. Under this approach, even if (hypothetically) ICIS indicated mistakenly that the trial information had been filed by the forty-fifth day, the defendant would go free in the event that subsequent research indicated otherwise. I expect one consequence of the majority's decision will be an effort by our State's prison population to comb their court files to see if they can take advantage of the same technical "failure to file" that existed in this case.

Ennenga received the trial information within forty-five days of his arrest. It was approved and signed by the district court at that time. A not guilty plea was entered that same day. Ennenga subsequently (within the speedy trial deadline) pled guilty to one of the two charges in

the information under a favorable plea bargain that allowed him to avoid a habitual offender enhancement.  I do not believe he is entitled to relief under these circumstances.

For the foregoing reasons, I would either affirm the denial of Ennenga's application for postconviction relief or, at most, remand for further proceedings on whether Ennenga's trial counsel breached an essential duty.

Cady, C.J., and Waterman, J., join this dissent.