**IN THE COURT OF APPEALS OF IOWA**

No. 4-024 / 13-0302
Filed February 19, 2014

**NAZARETH HOWARD,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Hamilton County, Michael J. Moon,

Judge.

        Nazareth Howard appeals from the district court's denial of his application

for postconviction relief.  **AFFIRMED.**

        Chad R. Frese of Kaplan, Frese & Nine, LLP, Marshalltown, for appellant.

        Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney

General, and Patrick B. Chambers, County Attorney, for appellee State.

        Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

The following facts were set forth in our opinion on direct appeal:

Nazareth Howard and Mindy Boldon had lived together and are the parents of two children. On February 1, 2007, a no-contact order between Howard and Boldon was issued and was in effect at all relevant times. Fearing Howard might attempt to enter her home, Boldon changed the locks on the doors. On the evening of March 8, Boldon barricaded one door with a piece of wood and also arranged for a friend to stay awake listening for signs of a break-in on a baby monitor while Boldon slept. Early in the morning of March 9, 2007, Howard broke through two doors and entered Boldon's home. Boldon and her friend heard Howard breaking in and both immediately called the police while hiding from Howard. Both women heard Howard angrily yelling for Boldon in a hateful voice, asking where she was. Soon, police officers arrived and found Howard hiding in a closet. Howard was uncooperative and the police had to use a [T]azer to take him into custody. After Howard was removed Boldon discovered the money envelope in her purse had been disturbed and her cash was hanging out, but nothing was missing.

*State v. Howard*, No. 07-1400, 2008 WL 2906553, at *1 (Iowa Ct. App. July 30, 2008).

Howard was charged with second-degree burglary and convicted thereof following a jury trial. *Id.* He appealed his conviction, asserting his trial counsel was ineffective and challenging the sufficiency of the evidence to support his conviction. *See id.* We preserved his ineffective-assistance-of-counsel claims for possible postconviction relief (PCR) proceedings, concluding the record was inadequate to resolve those claims at that time. *Id.* at *2-3. However, we concluded substantial evidence supported the jury's second-degree-burglary verdict because a rational trier of fact could have found Howard intended to commit an assault or theft at the time he violently entered Bolton's home. *Id.* We therefore affirmed his conviction. *Id.* at *3.

In June 2009, Howard filed his pro se application for PCR asserting numerous claims, including that his trial counsel was ineffective. The case languished in the court system until a PCR hearing was held in January 2013.[1] However, by that time, Howard's trial counsel had passed away.

At the PCR hearing, Howard testified he believed a card he received while he was in jail awaiting trial on his burglary charge should have been introduced into evidence at his trial. Although the card bore the name of Boldon's friend, Howard testified the card was actually from Boldon; Boldon had just "put her friend's name on [the card] like her friend sent [him] one." He testified Boldon wrote on the card, "I am sure everything will turn out okay," and she included money in the card for his jail account.

Additionally, Howard testified he believed an audio recording of him speaking to Boldon on the phone while he was in jail should have been admitted into evidence at his trial. He testified he called Boldon's sister-in-law, and he was told Boldon wanted to speak to him, but he refused. He stated Boldon then got on the phone, and, knowing the call was being recorded, asked him "why are you threatening me, why are you trying to get in touch with me?"

Howard admitted there had been a no-contact order between him and Boldon that prohibited him from going to Boldon's residence at the time of his burglary charge. However, he testified he believed that, had his trial counsel done as he asked and introduced this evidence, the jury would have known Boldon "wasn't scared like she [testified she] was" and that "she was misleading

---

[1] We do note that from the time Howard filed his PCR application to the time of the hearing, Howard had, as the district court put it, "retained and subsequently 'let go' at least six different attorneys."

the jury." He believed that had the evidence been introduced, the jury would not have found Boldon credible, and at best, he would have been found guilty of violating a no-contact order, not burglary.

Howard's trial counsel's deposition, taken in 2010, was admitted into evidence at the PCR hearing. Howard's trial counsel testified he did not introduce the evidence, explaining Howard was facing other charges involving phone calls and that he thought he'd be "going down a slippery slope." He testified, "if I get in that [Boldon] made phone calls to [Howard], I think I may have opened a door for the State to bring in all these [other] phone calls involving extortion, harassment. And to me that was . . . quite a danger."

Thereafter, the district court entered its ruling denying Howard's application for PCR. Howard now appeals, asserting the district court erred in finding he failed to establish his trial counsel was ineffective.

We first address a serious error preservation issue. On appeal, Howard contends had certain "evidence been proffered that Howard had provided to his trial counsel clearly the outcome would have been different in that he would only have been convicted of criminal mischief and violation of a no-contact order [rather than the class C felony for which he was found guilty]." Howard did not contend his trial counsel was ineffective for failing to present the card from Boldon and the jail telephone conversation recording in his application for PCR. Although the claim was discussed at the PCR hearing, it was not addressed in the district court's ruling.[2] Howard failed to file a Rule 1.904(2) motion requesting

---

[2] The district court ruled on Howard's claims of ineffective assistance of trial and appellate counsel for failing to argue insufficiency of evidence and of trial counsel for

the court to enlarge its findings and conclusions. *See* Iowa R. Civ. P. 1.904(2). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). In an effort to stave off another PCR proceeding, we choose to pass on Howard's serious preservation-of-error problems and elect to decide the merits of the issue he raises on appeal. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To prevail on his ineffective-assistance-of-counsel claims, Howard must show (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See id.* The first prong requires proof that counsel did not act as a "reasonably competent practitioner" would have acted. *State v. Simmons*, 714 N.W.2d 264, 276 (Iowa 2006). We presume the attorney performed competently and avoid second-guessing and hindsight. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Id.* Additionally, "[c]ounsel has no duty to raise an issue that has no merit." *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010). To show prejudice under the second prong, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ennenga*, 812 N.W.2d at 701. A reasonable probability is one "sufficient to undermine confidence in the outcome."

---

failing to object to the admission of prejudicial evidence. These claims were abandoned on appeal.

*See Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010). A reviewing court need not engage in both prongs of the analysis if one is lacking. *Id.* at 159.

Upon our de novo review of the record we find that Howard failed to establish his trial counsel was ineffective. First, it is clear Howard's trial counsel did not introduce the evidence based upon a reasonable trial strategy. Nevertheless, even assuming arguendo he breached his duty in not utilizing the evidence as suggested by Howard, Howard failed to show the result of his trial would have been different but for this alleged error. Howard makes bald assertions that had his counsel used the evidence "in a pretrial deposition" and "had [he] had the opportunity to depose the State's witnesses the outcome would have changed likely and the case may never [have] proceeded to trial or trial counsel would have been better prepared." None of these assertions explain *how* this evidence would have changed the outcome of the trial. We conclude that even if the evidence had been introduced at trial, it is unlikely the outcome of the proceeding would have been different.

Boldon's testimony was supported by other evidence at trial. Boldon's friend who stayed with Boldon that night testified Howard kicked Boldon's door in, and she heard him yelling, "Where is [Boldon]? Where is [Boldon]?" The responding police officer testified that when he arrived at Boldon's home, the main door to her house "was hanging from the hinges and the screen door was broke and the glass . . . was broken out." The officer testified he found Howard hiding in a closet in Boldon's home, and Howard refused to come out, at one point stating they "would have to shoot him or kill him to get him out of there." The officer stated they ultimately had to use a Taser to get him out of the closet.

He testified Boldon's purse was found with its contents disturbed and rummaged through.  The phone call described by Howard and the card, even if admitted into evidence at trial, would not have changed the outcome of the trial.

Because Howard's claims of ineffective assistance of trial counsel fail, the district court properly denied his application for PCR.  Consequently, we affirm the district court's ruling denying Howard's PCR application.

**AFFIRMED.**