# IN THE COURT OF APPEALS OF IOWA

No. 13-1925
Filed March 25, 2015

**RICKY FLOYD ALLEN,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Woodbury County, James D. Scott, Judge.


        Ricky Allen appeals the district court's ruling denying his application for postconviction relief. **AFFIRMED.**


        Zachary S. Hindman of Bikakis, Mayne, Arneson, Hindman & Hisey, Sioux City, for appellant.

        Thomas J. Miller, Attorney General, Heather Ann Mapes, Assistant Attorney General, Patrick Jennings, County Attorney, and Mark A. Campbell, Assistant County Attorney, for appellee.


        Heard by Danilson, C.J., and Potterfield and Bower, JJ. Scott, S.J., takes no part.

**BOWER, J.**

Ricky Allen appeals the district court's denial of his application for postconviction relief (PCR) of his conviction for possession of a controlled substance, marijuana, third or subsequent offender as a habitual offender. *See* Iowa Code §§ 124.401(5), 902.8 (2009). He claims his trial counsel rendered ineffective assistance by failing to recall a witness to present exculpatory testimony and by failing to object to hearsay testimony. Allen also claims the cumulative prejudice resulting from these failures satisfies the requisite prejudice element. Finally, Allen claims due process requires a new trial so he can present to a jury the inconsistent positions taken by the State in his criminal case and in the subsequent criminal case of Erik Seaton, a witness at Allen's trial.

Our de novo review shows defense counsel had valid, credible concerns about the witness's sudden ability, months after the incident, to identify who had made the offer to exchange marijuana for drinks. Thus, counsel's failure to recall the witness is not objectively unreasonable and is not a breach of an essential duty. We further find Allen has failed to prove he was prejudiced by counsel's failure to recall this witness. As to Allen's hearsay challenge, because the testimony was merely cumulative, Allen has failed to prove prejudice. Allen did not preserve his cumulative-prejudice claim for our review. We find no merit to Allen's due process claim and affirm.

## I.       Background Facts and Proceedings

In the early morning hours of October 23, 2010, Allen and Seaton entered a Sioux City bar. Either Allen or Seaton offered to give waitress Shannon Law

marijuana in exchange for beer. Law refused the offer, sought out Paul Andersen, the bar's manager and owner, and told him of the conversation. Allen and Seaton left the bar; Andersen followed as he requested the assistance of his bouncers, Chad Braun and Dan Cummings. Cummings then overheard Allen and Andersen exchanging heated comments. Braun also became involved in following Allen and Seaton as they walked away. At some point Andersen called the police, who arrived and arrested Allen.[1]

**A. Evidence at Trial.** Allen's two-day jury trial commenced in June 2011, and Braun and Cummings testified for the State. Braun testified Andersen told him: "[T]hese two have drugs on them" and "follow them, don't let them lose the drugs. Chad, do not let him lose the drugs." Braun then saw Andersen point directly at Allen. Braun identified Allen in the courtroom and explained Allen and Seaton look "completely different"—different height by six to eight inches, different hair color (light and dark), and different haircuts (Seaton had a buzz cut).

Braun testified Allen was "quite frustrated" and "was walking in circles and was upset and [Seaton] was trying to calm him down." Braun gestured for Cummings to give Allen "a little bit of space," and the bouncers stayed back in order to "see what is going on, but still ideal to react in case something happens." After a short time, Braun heard Seaton say, "We're off your property, just let us go now. Just let us go." Braun observed Allen had "pretty much calmed down." Allen and Seaton continued walking, and Braun described the incident:

---

[1] At trial, Andersen denied seeing either Allen or Seaton drop anything. Andersen admitted on the 911 recording he stated that he saw one of them drop something.

When we hit this point (indicating on map) Ricky Allen flung his hand [flicked his wrist] like he was skipping a rock and there was a truck sitting there . . . . And it sounded like a metallic object had bounced off the vehicle . . . . I never saw it again. I don't have a clue what it was.

Q. . . . And then what happened? A. . . . [T]hen we just kept following them and following them. And as they got up here (indicating) we did give them a bit more space. But . . . a bystander [later identified as Bradley Gregg] came over and asked [us] what was going on and we said don't worry about it . . . . Well, [Gregg] decided to run towards Ricky Allen, which sped up our pace quite a bit . . . .

. . . .

Q. . . . What happened? A. Mr. Gregg runs up to [Allen]. At the same time, I can see that [Allen] has his hands in his pockets . . . . [Allen] has his back to me, but I could see the gesture and I yelled, he's going to throw the dope, he's going to throw the dope. And [Allen] drops it—a bag on the ground. And I know it was a—just a twisty sandwich bag because you can see the top flap. And [Allen] has some kicking skills because he kicked that sucker and it went flying . . . underneath a car [Explorer] and went to the other side of it.

Braun stated when Gregg "started coming, [Allen and Seaton] started separating" and Seaton was "five foot" away from Allen when Allen "dropped the bag and kicked it." Braun saw the bag "all the way until it hit the Explorer, and then all I could see was its shadow, and I knew it was on the other end of the Explorer."

Braun saw Gregg punch Allen. Cumming broke up the Gregg/Allen altercation and restrained Allen. Braun "was more worried about the bag of dope" but was also worried about Seaton. Braun turned around and looked at Seaton, who was sitting on a vehicle. In response, Seaton gestured he "wasn't going to give [Braun] any trouble," and Braun believed Seaton "was out of the situation." Braun also testified Seaton "was trying to be a calming force in this" the whole time and "just wanted to go home." Braun explained the Explorer was

parked by itself, there was nothing else parked there, and "that's where the pot ended up being," just "right past it on the ground."

Braun stood by the baggie and said, "I found the dope." As he stood there, Braun made sure no one else had access to the baggie. He testified Allen's foot was the last touch on the baggie. The police arrived within one minute, Braun pointed out the bag, and the police secured it.[2] When Braun and Cummings left to return to the bar, the police were talking to Gregg, Allen, and Seaton. Sergeant Fleckenstein testified Seaton did not take responsibility for the marijuana at the scene.

As Braun was leaving the area, he stopped and looked around the spot where he had heard the metallic sound but did not find anything. Braun concluded his direct testimony:

> Q. . . . Do you think that Erik Seaton could have been the person that dropped and kicked the baggie that you saw? A. I would not be sitting here if I had even a percentage of doubt. I know one hundred percent who dropped the bag. I watched it get kicked, I watched where it went. I know what I saw. And I'm good with details.

On cross-examination, Braun testified: Allen was "the most fired up of the two, so [Cummings] restrained him, which stopped the fight. So—and I did exactly what [Anderson] told me to do: Chad, do not let him lose the dope."

Cummings also testified and stated as Allen and Seaton approached the entrance to an alley, Allen walked faster and Seaton hung back to talk with Cummings. When Allen got into the alley, Andersen, who was behind

---

[2] Later testing by authorities confirmed the baggie contained marijuana.

Cummings, told Cummings to "make sure you watch him because he's going to drop the drugs." Cummings described the incident:

> When we turned into the alley, I was just trying to watch [Allen] because I believed that he was going to drop whatever he was possessing that [Andersen] said he had. And with his back to me, I did see him reach into his front pants pocket . . . and then he kicked with one of his legs and that's when [Braun] said, hey, he dropped the drugs. And, boy, at that moment that's when [Gregg] comes flying by me [and Allen and Gregg get into a fist fight.]
> . . . .
> Q. . . . And do you recall where Mr. Seaton was when you saw [Allen] kick . . . ? . . . . A. . . . I would say [Seaton] was more between [Allen] and [me]. He was ahead of me, but he was behind [Allen].
> Q. . . . Are you sure that it wasn't [Seaton] who had put his hand in the pocket and kicked . . . ? A. Oh, absolutely sure.
> Q. . . . And why do you say that? A. Because I know who [Allen] is and I was looking at [Allen's] back and [Seaton] was closer to me. And [Seaton] was also back there . . . just kind of constantly chatting in my direction, but I was focused on looking at [Allen].

Cummings testified Allen was upset and very belligerent. Defense counsel asked: "[F]rom the very beginning, Mr. Allen denied that he had any drugs. Correct?" Cummings answered: "I don't remember Allen saying that he didn't have any [drugs]. I remember [Allen] saying he didn't sell any F-ing drugs." Although Cummings saw a baggie at the end, he admitted he had "no idea what was kicked." Finally:

> Q. . . . You didn't see anything drop to the ground or anything fly away, you just saw Mr. Allen kick? A. Well, that's not entirely correct. I did see him reach in his front pocket and I did see the kick. And then I heard something and it sounded like a tink, tink, tink sound. It sounded like something small, metal bouncing. I didn't have any idea what it might be. At first I thought maybe it was a vial of something.

Cummings explained after he heard the sound, the incident moved further down the alley, Gregg and Allen got into the altercation, and Cummings restrained Allen.

Defense counsel called three witnesses: Erik Seaton, Shannon Law, and Paul Andersen. Seaton stated he and Allen had been very good friends for over five years and live in the same house. Seaton attended the depositions for the case with Allen. Seaton testified *he* had a conversation with Law "somewhere along the lines of me offering marijuana for beer or for her to smoke marijuana with me." Seaton made the offer because he was broke "so I figured I'd try to barter." Seaton stated Law "had a negative reaction and immediately went and told the owner, the security guards, and we left." Seaton testified as he and Allen were walking away, they were walking maybe "five, six feet apart" with Andersen and the bouncers following. As Gregg approached, Seaton also heard police sirens and "reached into my pocket and threw the bag of marijuana I had." Seaton was eight to ten feet away from Allen when Seaton threw the bag. Seaton also testified he had the baggie in his pocket the entire night.[3]

Seaton explained he did not admit possession on the scene or thereafter because he thought there could not be a possession charge if the drug was not "on anybody's person." Three months after the incident, Seaton contacted Allen's attorney "to let the truth be known." Seaton testified to the type of marijuana he possessed and the price he paid. On cross-examination Seaton acknowledged that during his deposition he had stated he offered the drugs to

---

[3] Seaton admitted to pleading guilty to burglary charges in both 2006 and 2007.

Law because "she was a friend that [he] had known before." Also at the deposition, Seaton stated he did not know Law's name.

Law testified she approached the table with two guys and asked if she "could get them something to drink. The one sitting on the right side said yes. He said if I could get him a pitcher of beer, he would trade me a bag of [marijuana] for it." When asked if the two guys were in the courtroom, Law stated one of them was in the back, referring to Seaton. Law reported the conversation to Andersen without identifying the person who had made the offer, and she did not see any of the events outside. Law remembered talking to the prosecutor on the phone prior to trial. "Q. [D]o you recall telling me [prosecutor] that Ricky Allen was the one that offered you marijuana? A. I was not aware of what their names were. Q. Okay. But do you remember telling me that information? A. No." At trial, neither defense counsel nor the prosecutor asked Law to identify the person who offered to trade marijuana for beer.

After Law left the courtroom, she approached an investigator for the defense and stated Seaton was the man who had offered her the marijuana that night. The investigator informed defense counsel, who chose not to recall Law. After the verdict, counsel moved for a new trial based on (1) Law's post testimony identification constituting newly discovered evidence and (2) a weight-of-the-evidence challenge. The court denied the motion.[4]

---

[4] The court noted the motion was accompanied by an offer of proof—affidavits of Law and the investigator. "The thrust of the affidavits are to suggest that Ms. Law had somehow changed her testimony or recanted." But the record shows "this is not a recanting of testimony but rather is a mischaracterization of what occurred at trial when compared to what may have been intended" at trial for "the testimony of Ms. Law."

The final defense witness, Andersen, testified Law pointed to two guys and did not identify any specific individual as the person offering drugs for beer. Andersen followed Seaton and Allen and told them not to sell drugs in his club. Allen was more upset than Seaton and was more animated. As Andersen got out his cell phone to call the police, Seaton and Allen started walking away. Gregg was in the area as Andersen called the police. Andersen did not see Allen drop anything.

On rebuttal, Officer Joshua Tyler explained various types of marijuana and pricing. He disputed Seaton's statements on type/pricing of the marijuana in the baggie.

**B. Closing Arguments, Verdict, and Sentencing.** Based on the claims Allen raises, we find it necessary to set out the closing arguments to show the theories of the case. The prosecutor emphasized the testimony of Braun and Cummings, "non-biased witnesses," about the outside events as proof of the first element—Allen knowingly or intentionally possessed marijuana and also as proof of the second element—Allen knew the substance he possessed was marijuana. The prosecutor characterized Seaton as motivated to testify to help out his friend. She pointed out Seaton did not step in when Andersen was arguing with Allen and likewise did not speak up when the police arrested Allen. In contrast: "Braun saw [Allen] commit the crime. It's not a case of mistaken identity. You saw both of them. [Allen and Seaton] clearly look nothing alike." The prosecutor also discredited Seaton's testimony on the basis of Tyler's testimony Seaton "couldn't even get half of that baggie for that kind of money," noting Seaton "didn't even

know how much the marijuana was worth." The prosecutor pointed out the inconsistency of Seaton stating he felt comfortable offering "his friend" Shannon Law the marijuana but he did not know her name. Next, the prosecutor addressed the testimony of Andersen and Law:

> Andersen was not in a position to see what happened outside. I can talk about what happened inside and the waitress can talk about inside. Does that really matter? We're here to talk about who dropped that bag of marijuana in the parking lot. The rest of it doesn't matter. It is what happened in that 30-second, one-minute time frame.

The prosecutor concluded, the

> only story that makes sense is what Mr. Braun and Mr. Cumming saw because it's actually what happened. From their testimony they saw the defendant do this crime, Mr. Braun saw it right in front of his eyes, he is an unbiased witness. He has nothing to gain from this.

Defense counsel responded in her closing by crediting Seaton's testimony the marijuana was his and discrediting Cumming's testimony he saw Allen toss something and then heard a tink, tink, tink, sound. Counsel stressed there was no metal in the bag of marijuana, "nothing that would make a tink, tink sound" and also stressed Cummings's admission he did not see what Allen kicked. Defense counsel concluded, therefore, the "only person [testifying he] saw Mr. Allen drop and kick this bag of marijuana was Mr. Braun." Counsel claimed the distance Braun said the baggie was kicked was physically impossible, making the final location of the baggie more consistent with Seaton's testimony of his location when he disposed of it. Thus, Seaton's toss was, in fact, what Mr. Braun saw. Finally, counsel pointed out Seaton is also a disinterested witness with nothing to gain and much to lose—he "can face prosecution in this case."

On rebuttal the prosecutor stated: "Look at the facts. Look at the evidence. You have an eyewitness to this crime." The jury returned a verdict of guilty. Outside the presence of the jury, Allen stipulated to his prior convictions. The court imposed an enhanced sentence.

**C. Direct Appeal.** Allen appealed, challenging the district court's denial of his motion for new trial.[5] *See State v. Allen*, No. 11-1428, 2012 WL 3589468, at *1 (Iowa Ct. App. Aug. 22, 2012). This court affirmed, finding Law's testimony was not discovered after the verdict, Law was not asked if it was Allen or Seaton who offered the marijuana, and the "evidence could have been elicited at trial if either party had asked the question." *Id.* at *3. We also found no abuse of discretion in the court's denial of a new trial based on the weight of the evidence. *Id.* at *4.

**D. Postconviction Proceedings.** Allen filed an application for postconviction relief. As relevant to this appeal, Allen claimed trial counsel rendered ineffective assistance in failing to present exculpatory testimony of disinterested witness Shannon Law and in failing to object to hearsay evidence and request a limiting instruction. Allen also claimed relief due to Seaton's subsequent guilty plea and conviction constituting newly discovered evidence relevant to the issue of who possessed the marijuana on October 23, 2010.[6] In addition, Allen alleged due process required a new trial because the State took

---

[5] Allen also appealed his sentence, and this court denied relief on procedural grounds.
[6] On April 12, 2012, Seaton pleaded guilty to possessing marijuana with intent to deliver.

inconsistent positions in his criminal proceedings and the separate criminal proceedings against Seaton.

At the hearing on Allen's application, the PCR court heard the testimony of Shannon Law, Erik Seaton, Allen, trial counsel for Allen, and the prosecutor at trial. In a detailed, well-reasoned ruling, the PCR court denied relief on all claims.[7] Allen now appeals.

## II.  Scope and Standards of Review

Allen's claim his trial counsel rendered ineffective assistance is reviewed de novo. *See Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish an ineffective-assistance-of-counsel claim, Allen must demonstrate, by a preponderance of the evidence, trial counsel failed to perform an essential duty and the failure prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## III.  Ineffective Assistance of Trial Counsel

**A.  Failure to Recall Shannon Law.**  The PCR court ruled Allen did not prove either prong—breach of duty or prejudice.  On appeal, Allen first challenges the ruling on the duty prong. Allen claims his trial strategy "was that Seaton, and not Allen, was at all times in possession of the marijuana," while the State's strategy was to attack Seaton's credibility. Under these circumstances, Allen claims his trial counsel breached an essential duty in failing to recall

---

[7] Allen also made several claims that are not reasserted in this appeal.  Allen claimed trial counsel rendered ineffective assistance in failing to strike jurors who were prejudiced against him, failing to request a bench trial, failing to inform him of his right to attend a pretrial hearing, and failing to inform him of his right to not admit to his prior convictions.  Allen also alleged his appellate counsel was ineffective.  Finally, Allen claimed his conviction was not supported by substantial evidence.

witness Shannon Law. Allen claims this testimony "would have supported an inference that since Seaton and not Allen made the offer, Seaton and not Allen was in possession of the marijuana in the bar." Further, because the bag was thrown "just minutes later," with the bouncers constantly following Allen and Seaton, "Law's testimony would thus have been powerful evidence in support of Allen's argument that Seaton had and threw the marijuana in the parking lot" and "would also have bolstered Seaton's testimony." Finally, Allen claims trial counsel's failure to recall Law was not a reasonable trial strategy and Law's testimony at the PCR hearing was not credible.

In our analysis of the duty prong, we employ a strong presumption "counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency." *State v. Cook*, 565 N.W.2d 611, 614 (Iowa 1997). "In determining whether an attorney failed in performance of an essential duty, we avoid second-guessing reasonable trial strategy." *Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010).

We first turn to trial counsel's testimony in the PCR hearing. She emphasized Law had been unable to identify who offered her marijuana prior to trial. Specifically, Law "said that she didn't know during each of our prior conferences, that she wasn't sure. She remembered someone offering it to her but couldn't say for sure whether it was Mr. Allen or Mr. Seaton." And, "[a]ll I can tell you is up until after she testified she was consistent in telling me and my investigators that she couldn't say which one it was." Counsel knew she had the option to recall Law, but given the fact Seaton had already testified he made the

offer to Law, she did not see a need to recall Law. "Additionally, based on [Law's] prior inconsistencies, it was decided not to call her back."

Our de novo review shows trial counsel had valid, credible concerns[8] about Law's sudden ability, months after the incident, to identify whether Seaton or Allen had made the offer in the bar. Thus, counsel's actions were not objectively unreasonable. *See State v. Palmer*, 569 N.W.2d 614, 618 (Iowa Ct. App. 1997) (rejecting claim counsel was ineffective for failing to recall a witness and accepting "counsel's tactical judgment"). Because Allen's trial counsel relied on a legitimate tactical reason and strategy in deciding not to recall Law as a witness, we conclude her performance did not fall below prevailing professional standards. *See id.* Allen has failed to prove counsel breached an essential duty.

We turn to the prejudice prong. After setting out the inconsistencies in the testimony of Braun and Cummings as highlighted by defense counsel in her closing argument, Allen claims the State's case was weak and he was prejudiced by counsel's failure to recall Law. Because "the central issue at trial was credibility" i.e., "whether Seaton or the bouncers were more credible," the effect of Law's testimony would have been to corroborate a "key portion of Seaton's testimony and would have undermined the State's attempts to discredit Seaton."

To succeed Allen must show "counsel's error worked to his actual and substantial disadvantage, creating a reasonable probability that but for the error the trial's result would have been different." *Cook*, 565 N.W.2d at 641. "A

---

[8] We see no reason to disturb the PCR court's credibility determination. *See Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996) ("The district court has a better opportunity than we do to evaluate the credibility of witnesses. So we think factual disputes depending heavily on such credibility are best resolved by the district court.").

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 693-94 (stating "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding"). Counsel's unprofessional error "resulting in the mere impairment of presenting the defense is not sufficiently prejudicial." *State v. Clay*, 824 N.W.2d 488, 496 (Iowa 2012).

While trial counsel's failure to offer this testimony might have impaired the defense of Allen in the sense of bolstering Seaton's testimony he was the person making the offer to Law, we disagree with Allen's characterization that whether Allen or Seaton made the offer was "key" testimony. First, as shown by the State's closing argument, under the State's theory the "key" testimony concerned the events outside the bar: "[T]he waitress can talk about inside. Does that really matter? We're here to talk about who dropped that bag of marijuana in the parking lot. The rest of it doesn't matter. It is what happened in that 30-second, one-minute time frame." Second, on direct appeal we recognized the "key" testimony dealt with the events outside the bar:

> [W]e find [Law's testimony] was not likely to change the outcome of the trial. The fighting issue was whether it was Allen or Seaton who possessed a bag of marijuana and kicked it under a car outside of the bar. Law was not present when this event occurred, and the information she provided to the . . . investigator was cumulative to Seaton's testimony at trial. Seaton stated he was the one to offer marijuana and was the one who took it out of his pocket and threw it under the cars.

*Allen*, 2012 WL 3589468, at *3. Third, the State had an eyewitness, Braun, who credibly testified Allen, not Seaton, kicked the baggie of the marijuana. Cummings also saw Allen reach into his pocket and then make a kicking motion.

This combined testimony, though inconsistent in some regards, shows the State's case against Allen was not weak. *See State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) ("The most important factor under the test for prejudice is the strength of the State's case.").

On the central issue, whether Allen or Seaton kicked the baggie of marijuana in the parking lot, we believe Law's testimony to events inside the bar has minimal effect. Given these circumstances, it is not "reasonably probable" Law's additional testimony would have resulted in an acquittal. *See Strickland*, 466 U.S. at 694. Upon our de novo review, we conclude Allen has failed to prove he was prejudiced by counsel's failure to recall Law.

**B. Failure to Object to Hearsay.** The testimony at issue includes statements by Braun and Cummings that Andersen instructed them to follow Allen and not let Allen "lose" or "drop" the drugs. Allen claimed, and the PCR court recognized, "because a limiting instruction was not requested, the jury was allowed to consider the testimony" of Braun and Cummings "as the jury sees fit— meaning, the jury could use the statements by [Andersen] [for] the truth of the matter asserted." *See Clay*, 824 N.W.2d at 499 ("Hearsay evidence may establish a material fact at issue in a trial, if the court admits the evidence without objection.").

On appeal, Allen claims counsel's failure to object and limit the use of the bouncers' testimony of Andersen's statements was a breach of duty. This failure resulted in prejudice because Andersen's statements had none of the inconsistencies found in the live testimony of the bouncers. Thus, the statements

were "better evidence for the State." Allen claims that due to the hearsay statements directly implicating Allen in the charged offense and due to the overall weakness of the State's case, he was prejudiced by counsel's failure.

Like the PCR court, we turn to the prejudice prong. Upon our de novo review, we find Allen has not met the *Strickland* standard of proving but for counsel's alleged errors, the result of the proceeding would have been different. *See* 466 U.S. at 694. We have already rejected Allen's contention the inconsistencies in the eyewitness testimony of the bouncers resulted in a "weak case." Braun gave eyewitness testimony he saw Allen kick the bag of marijuana. Cumming gave eyewitness testimony he saw Allen make a kicking motion. Both adamantly testified they had not mistaken Allen for Seaton. In comparison, Andersen's statements were mere speculation about what might occur as the bouncers followed Allen and Seaton, not "better evidence." Because Andersen's statements, at most, were "merely cumulative" in light of the overall evidence of Allen's guilt, we find Allen has failed to prove he was prejudiced by counsel's failure to object and seek a limiting instruction. *See State v. Fillmer*, No. 01-0508, 2002 WL 1331892, at *1 (Iowa Ct. App. June 19, 2002) (finding no prejudice resulting from counsel's failure to object to hearsay testimony "merely cumulative" of defendant's guilt).

**C. Cumulative Prejudice.** The PCR court analyzed whether trial counsel's failure to object to hearsay testimony and failure to inform Allen he had a right to deny his prior convictions resulted in cumulative prejudice under *Clay*,

824 N.W.2d at 500. Viewing those two "errors in the aggregate" and considering those two errors "with the remaining evidence," the PCR court denied relief.

On appeal, Allen does not reassert his claim based on counsel's failure to inform him of a right to deny his prior convictions. Allen instead claims the cumulative prejudice resulting from two different failings of counsel entitles him to relief—failure to recall Law and failure to object to hearsay. Because Allen's appellate claim was not decided by the PCR court, this issue was not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

## IV.    Due Process—the State's Inconsistent Positions

After Allen's trial, the State charged Seaton with possession with intent to deliver marijuana, alleging Seaton offered to deliver marijuana to Law. Seaton pleaded guilty to the charge. Allen's PCR application claimed he was entitled to a new trial because Seaton's conviction constituted newly discovered evidence relevant to who possessed the marijuana. At the PCR hearing, Allen additionally claimed the State's inconsistent positions in the two criminal proceedings violated his due process rights.

The PCR court ruled Seaton's conviction was not newly discovered evidence. The PCR court then addressed whether Allen's due process rights were violated on the basis of the prosecution using inconsistent theories to convict both Seaton and Allen. *See Smith v. Groose*, 205 F.3d 1045, 1051-52 (8th Cir. 2000) ("We do not hold that prosecutors must present precisely the

same evidence and theories in trials for different defendants. Rather, we hold only that the use of inherently factually contradictory theories violates the principles of due process."). The PCR court denied relief.

On appeal, Allen claims: "[T]he State's litigation positions in his and Seaton's prosecutions are sufficiently inconsistent that the State's litigation position in Seaton's case undermines its arguments in Allen's case, and as a matter of due process, Allen is entitled to present the evidence of those inconsistent positions to the jury."[9] Upon our de novo review, we agree with the PCR court's analysis:

> [Allen] and Seaton were not convicted of the same crime. Seaton was convicted based on his possession of the drugs inside the bar, which was based on his admissions at [Allen's] trial, and [Allen] was convicted of his possession of the drugs outside the bar . . . . Furthermore, a defendant's rights are not violated "when the prosecution relies on reconcilable theories that are not *factually* contradictory." *Johnson v. United States*, 860 F. Supp. 2d 663, 863 (N.D. Iowa 2012). The theory submitted to the jury by the prosecution in [Allen's] trial and the trial information that Seaton's conviction is founded on are not irreconcilable. Both convictions are based on a separate factual basis; both factual theories are plausible . . . . Seaton pleaded guilty to the charge of possession in the bar that night, and the jury convicted [Allen] based on eyewitness testimony that he was later in possession of the drugs outside of the bar that same night.

Accordingly, we find Allen's due process rights were not violated—the State did not assert two irreconcilable theories based on factually inconsistent contradictions. Instead, Allen's and Seaton's convictions were based on reconcilable versions of the October 23, 2010 events. *See id.* at 863 (ruling due

---

[9] Allen also claims on appeal that the State's inconsistent positions in the two trials constitute newly discovered evidence. Because the PCR court did not address this claim below, it is not properly before us. *See Meier*, 641 N.W.2d at 537.

process is violated when "the prosecution relies on diametrically opposed testimony from the same witnesses").

**AFFIRMED.**