# IN THE COURT OF APPEALS OF IOWA

No. 16-2066
Filed November 8, 2017

**JOSEPH EDWARD ALBERT OLEA,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Jasper County, Terry Rickers, Judge.

An applicant appeals the district court decision denying his request for postconviction relief from his conviction for child endangerment causing death. **AFFIRMED.**

Edward Fishman of Nelsen & Feitelson Law Group, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

Joseph Olea appeals the district court decision denying his request for postconviction relief from his conviction for child endangerment causing death, a class "B" felony with an enhanced sentence, in violation of Iowa Code section 726.6(1)(b), (3), and (4) (2015). Because Olea could not prove either a breach of duty or any prejudice resulting from either his trial or postconviction counsel's performance, we affirm the decision of the district court denying the application for postconviction relief.

## I. Background Facts and Proceedings

In February 2014, following a jury trial, Olea was convicted of child endangerment causing the death of his six-month-old son, K.O. His conviction was affirmed on appeal. *State v. Olea*, No. 14–0218, 2015 WL 2406757, at *6 (Iowa Ct. App. May 20, 2015).

Olea filed an application for postconviction relief (PCR) in 2015 raising claims of ineffective assistance of trial counsel, and a PCR hearing was held August 25, 2016. Olea claimed his trial counsel should have objected to the alleged presence of a thirteenth juror during deliberations and trial counsel should have offered evidence the child's treating physicians were liable for failing to diagnose what he claimed was the cause of death, cerebral venus thrombosis (CVT). After receiving testimony and exhibits, the PCR court issued its ruling denying Olea's claims. Olea appeals from that ruling and also claims he received ineffective assistance of postconviction counsel. He asserts PCR counsel conceded an issue after the PCR hearing, failed to introduce evidence of

a possible CVT diagnosis, and failed to file a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) seeking an additional finding by the PCR court.

## II. Standard of Review

We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, an applicant must show (1) the attorney failed to perform an essential duty and (2) prejudice resulted to the extent it denied the applicant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). An applicant has the burden to show by a preponderance of the evidence counsel was ineffective. *See State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992). While our review is de novo, we give weight to the trial court's findings on the credibility of witnesses. *Taylor v. State*, 352 N.W.2d 683, 687 (Iowa 1984).

## III. Trial Counsel

### A. Thirteenth Juror

Olea asserts he was received ineffective assistance because trial counsel did not object to the alleged presence of a thirteenth juror during jury deliberations.

Iowa Rule of Criminal Procedure 2.18 provides for a jury of twelve jurors. Once a verdict is read, "[a] party may then require a poll asking each juror if it is the juror's verdict." Iowa R. Crim. P. 2.22(5). During Olea's trial, counsel agreed to select fourteen jurors with two designated as alternates. The alternates would be excused prior to deliberation. The record establishes the two alternate jurors were excused as the district court judge, Judge Hefner, informed them, "[y]ou are now free to leave the courthouse but you are not released from the admonition I

previously gave." He then stated, "The remaining twelve may now retire to the jury room." A short time later, the jury returned their verdict, and Judge Hefner began polling the jury. According to the court reporter's transcript, the first name, Tammy Zink, an alternate, was called, and she answered "Yes."

At the PCR hearing, Olea and trial counsel testified they did not recall specifically how many jurors were in the jury box when polled. However, Judge Hefner testified there were only twelve jurors in the jury box and he mistakenly read the name of Zink, the alternate, which had been left on the jury sheet. Judge Hefner testified either his court reporter or the court attendant quietly corrected him as to not cause him embarrassment; however, the court reporter had already recorded the name he read. Likewise, the court reporter testified she did not notice an additional juror in the jury box. She recalled an off-the-record discussion at counsel's table, a correction by the judge, and the polling then continued.

The issue comes down to which witnesses' version of events the PCR court found more credible. The PCR court found Judge Hefner's recollection to be more credible. Moreover, Olea failed to present any evidence that there was a thirteenth juror actually in the jury room, participating in the deliberations, and Olea's trial counsel could not recall whether a thirteenth juror participated in the deliberations. Judge Hefner very clearly testified, "I'm absolutely confident that twelve and only twelve jurors deliberated in this case." Nothing in the record suggests we should disturb the PCR court's findings denying Olea's claim of a thirteenth juror. Thus, we agree with the PCR court that Olea's trial counsel did not breach an essential duty by failing to lodge such an objection during trial.

**B. Evidence of CVT**

Next, Olea claims he received ineffective assistance because trial counsel failed to submit evidence of the child's treating physicians' failure to diagnose CVT, which he claims was the cause of his son's death. Olea asserts his trial counsel should have offered evidence of prior medical appointments, or reviewed those medical documents with his defense expert, which may have shown the presence of CVT.

At the criminal trial, in order to support his defense theory—that undiagnosed CVT was the cause of death instead of abusive head trauma—Olea relied on the expert testimony of Dr. Zhongxue Hua. After reviewing the evidence from the criminal trial, the PCR court noted:

> Dr. Hua's testimony . . . necessarily includes the presumption that the CVT went undiagnosed and was present for some period of time prior to K.O.'s death. None of the State's witnesses agreed with Dr. Hua. Each of the medical experts or treating physicians called by the State testified that K.O. died of abusive head trauma and ruled out CVT as a cause of death.

"Both elements [of an ineffective-assistance claim] do not always need to be addressed. If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney preformed deficiently." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The PCR court concluded, "Mr. Olea has failed to prove by a preponderance of the evidence that but for his trial counsel's decision not to offer evidence that K.O.'s treating physicians failed to diagnose and treat CVT, the outcome of the trial would have been different." We agree.

The jury heard testimony from Dr. Hua and several experts for the State. While Dr. Hua testified K.O.'s autopsy showed signs of CVT damage, none of the State's experts agreed with his opinion, and several ruled out the possibility of CVT due to extensive bruising of K.O.'s head and ribs, which indicated the child had suffered physical abusive. *See Olea*, 2015 WL 2406757, at *4. The PCR court emphasized Olea's failure to rebut the numerous experts who testified K.O. died of abusive head trauma.

Additionally, while trial counsel testified that Dr. Hua would have testified about CVT not typically manifesting until weeks before the incident, K.O. was not medically diagnosed with any ailment at his two-month or four-month checkups. At an appointment one day prior to his death, K.O.'s mother was told "he was healthy." At no point has Olea offered any medical records indicating K.O. was showing the symptoms of CVT. Because there is no evidence indicating K.O. suffered from CVT and Olea has not provided what additional testimony Dr. Hua could have provided had the medical records been admitted into evidence, Olea has not shown there was any failure to diagnose CVT by K.O's treating physicians.

We therefore agree with the PCR court's findings and conclude Olea has not shown he received ineffective assistance based on his trial counsel's failure to submit additional evidence that medical providers failed to diagnose CVT.

## IV. Postconviction Counsel

### A. Concession after Hearing

Next, Olea contends he received ineffective assistance because postconviction counsel, after the PCR hearing concluded, submitted a proposed

order that conceded Olea had not proven by a preponderance of the evidence that thirteen jurors deliberated at trial. Olea alleges his counsel's performance was so deficient as to cause structural error by denying him counsel at a crucial stage and failing to place his case against meaningful adversarial testing. *See Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011). Structural error occurs:

> (1) [when] counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.

*Id.* We conclude Olea was not denied meaningful representation in the PCR action. Throughout the PCR proceedings, including the evidentiary depositions, Olea's PCR counsel was able to examine Judge Hefner, the court reporter, Olea's trial counsel, and Olea regarding the thirteenth juror. It became clear that while Olea and trial counsel could not remember how many jurors were present, the presiding judge was specifically aware of how many jurors were seated in the jury box at the time the jury was polled. At the close of the PCR hearing, Olea's PCR counsel made a strategic decision to focus on his claims regarding undiagnosed CVT rather than the thirteenth juror. *See Brewer v. State*, 444 N.W.2d 77, 83 (Iowa 1989) ("[W]e will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail."). Olea's PCR counsel abandoned a claim that garnered no evidentiary support from the PCR testimony.[1] *See State v. McPhillips*, 580

---

[1] *See* Iowa R. of Prof'l Conduct 32.3.1. ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . .")

N.W.2d 748, 754 (Iowa 1998) (explaining counsel is not incompetent for failing to pursue an issue that has no merit). Thus, since PCR counsel made a strategic decision to focus on the seemingly more meritorious CVT claim and concede the claim that turned out to have no basis in fact, PCR counsel has not breached an essential duty.

## B. Evidence of CVT at PCR Hearing

Olea revamps his claim that CVT went undiagnosed by K.O.'s treating physicians by asserting PCR counsel should have more vigorously pursued the same claim.

As set forth above, pertaining to trial counsels' effectiveness, the PCR court noted the jury heard testimony from Dr. Hua and several experts for the State. As each of the experts for the State testified that K.O. died of abusive head trauma and since Olea did not offer the medical records or evidence K.O. definitively suffered from CVT, the PCR court ruled Olea failed to prove by a preponderance of the evidence that the outcome of the trial would be different. On appeal, Olea does not indicate what PCR counsel could have done differently to persuade the PCR court that his claim against trial counsel was meritorious. There is no indication on appeal that there is any evidence regarding an undiagnosed CVT condition in the medical records, and Olea cannot demonstrate that he would have had any reasonable chance of success had such evidence existed and been offered. Accordingly, there is nothing in the record establishing Olea's PCR counsel breached an essential duty such that prejudice resulted.

**C. 1.904(2) Motion**

Finally, Olea asserts he received ineffective assistance because postconviction counsel failed to file a posttrial motion under Iowa Rule of Civil Procedure 1.904(2).[2] He contends counsel should have filed a rule 1.904(2) motion seeking specific findings of fact and conclusions of law regarding his claim the victim's mother may have caused the fatal injuries.

Olea's application for postconviction relief does not contain a claim alleging K.O.'s mother inflicted the abusive head trauma or in any way caused the death of her son. Moreover, Olea's trial counsel testified their trial strategy was to focus on the CVT-causation theory by highlighting Dr. Hua's testimony. *See Brewer*, 444 N.W.2d at 83 ("[W]e will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail."). Neither trial counsel nor Olea testified to the mother's potential liability. At the PCR hearing, Olea testified he did not think trial counsel "should have just gave up" on the theory the mother injured K.O. because "she was the last one with him."

Because Olea did not claim the mother injured K.O. in his application for postconviction relief, and the evidence at the PCR trial indicated that trial counsel's strategy was to focus on Dr. Hua's opinion regarding CVT, Olea is unable to show a different outcome would reasonably occur at PCR had PCR

---

[2] This rule provides: "On motion joined with or filed within the time allowed for a motion for new trial, the findings and conclusions may be reconsidered, enlarged, or amended and the judgment or decree modified accordingly or a different judgment or decree substituted." Iowa R. Civ. P. 1.904(2).

counsel filed a motion under rule 1.904(2) asking the PCR court to rule on this ineffective-assistance claim.

## V. Conclusion

Because Olea did not show, at the PCR hearing, thirteen jurors deliberated or there was evidence of undiagnosed CVT, he failed to prove trial counsel was ineffective. Also, PCR counsel was not ineffective in submitting its proposed order, in failing to offer additional medical records, or in failing to file a rule 1.904(2) motion.

**AFFIRMED.**