**IN THE COURT OF APPEALS OF IOWA**

No. 16-1674
Filed December 6, 2017

**JOSHUA DAVID MITCHELL,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Linn County, Kevin McKeever,

Judge.


     An applicant appeals the district court's denial of his application for

postconviction relief.  **AFFIRMED.**


     Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant

Appellate Defender, for appellant.

     Joshua David Mitchell, Fort Dodge, appellant pro se.

     Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


     Considered by Vogel, P.J., and Tabor and Bower, JJ.

**VOGEL, Presiding Judge.**

Joshua Mitchell appeals the district court's denial of his application for postconviction relief (PCR). He asserts his trial counsel was ineffective for (1) allowing him to plead guilty when he claims his plea was not made voluntarily and intelligently, (2) failing to perform an adequate investigation, and (3) failing to move to suppress his confessions. He also asserts the PCR court erred when it excluded exhibits he sought to introduce.

## I. Background Facts and Proceedings

Mitchell pled guilty to two counts of sexual abuse in the second degree, in violation of Iowa Code sections 709.1 and 709.3(1)(b) (2011). The trial information alleged that Mitchell committed multiple sex acts on his five- and nine-year-old daughters. Mitchell agreed to plead guilty to both counts in exchange for the State's recommendation the sentences run concurrently. The trial court accepted the plea after finding it was entered voluntarily and intelligently. The court accepted the State's recommendation and imposed two, twenty-five-year terms of incarceration, to be served concurrently.

Mitchell filed two pro se applications for postconviction relief over the next few years, which were eventually amended by appointed counsel and came on for hearing on May 12, 2016. After hearing testimony from both Mitchell and his trial counsel, the PCR court denied Mitchell's application. Mitchell appeals.

## II. Standard of Review

We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). We review the court's evidentiary rulings for an abuse of discretion. *Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d

681, 685 (Iowa 2012). "An abuse of discretion occurs when the trial court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

### III. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, an applicant must show (1) the attorney failed to perform an essential duty and (2) prejudice resulted to the extent it denied the applicant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2008). In order to show prejudice, an applicant must show that, but for counsel's breach of duty, he would not have pled guilty. *Ennenga*, 812 N.W.2d at 708.

#### A. Mental Condition

Mitchell contends his trial counsel provided ineffective assistance because counsel allowed him to plead guilty although his plea was not voluntarily or intelligently given due to his "mental conditions and medications." Mitchell claims his long history of mental illness, including past diagnoses of ADHD, bipolar disorder, Asperger's syndrome, and anxiety, and the medication prescribed when he was in custody awaiting the outcome of his case rendered his plea involuntary and unintelligent.

The record reveals that Mitchell suffered from a variety of psychological and physiological symptoms from the time of his arrest on April 18, 2011, until the plea proceedings on July 7, 2011. Despite Mitchell's claims that his mental condition and medications affected his capacity, the PCR transcript reveals his trial counsel was aware of Mitchell's claims that he heard voices and was depressed. Mitchell's trial counsel also stated Mitchell felt better on the prescribed medications and he

had no questions regarding Mitchell's capacity or competency to render a plea. A review of the plea proceedings indicates Mitchell answered all the court's questions appropriately and gave coherent statements forming a factual basis of the two charges. The PCR court found:

> Although [Mitchell] obviously suffers from mental illness, he has not put forth any evidence that would suggest that his mental illness would result in a finding of either a diminished capacity at the time of the offense or a lack of competence at the time of the plea or sentencing hearings.

As to whether any medications Mitchell was taking affected his rendering of the plea, the State asserts Mitchell has waived any such claim. We agree, as the PCR court only ruled on the effect of Mitchell's mental capacity, not on the effect of any of his medications, on the plea proceedings. But even if the PCR court had ruled on any effect of the medications Mitchell was taking, a review of the medical records made the day before the plea proceedings indicate Mitchell was not experiencing any side effects from the prescribed medications such that his plea would be involuntary or unintelligently made. Therefore, we conclude Mitchell has failed to prove trial counsel was ineffective in allowing him to plead guilty or that his PCR counsel was ineffective in not pursuing a ruling on whether Mitchell's medications affected his ability to render his plea.

### B. Investigation

Mitchell next asserts his trial counsel provided ineffective assistance because counsel did not perform an "adequate investigation" prior to his guilty plea. In support, Mitchell points to trial counsel's lack of filing any pretrial motions, taking any depositions, or conducting "meaningful" discovery, and trial counsel's failure to request a mental evaluation or review his mental health records. Mitchell

claims these omissions left him uninformed as to whether he should plead guilty or proceed to trial because he was not presented with all of the information or possible defenses at his disposal.

Trial counsel testified that he conducted his office's standard discovery protocol, beginning with investigators interviewing Mitchell. The investigators notified counsel that Mitchell confessed to them that he sexually abused his daughters. Counsel then spoke with Mitchell and reviewed documents, including the interview reports, police reports, minutes of evidence, and Child Protection Center reports. Mitchell's trial counsel made a strategic decision not to depose Mitchell's daughters because he did not want to lock in, or have the children "rehearse," their testimony that might be adverse to Mitchell should Mitchell choose to go to trial. Additionally, once counsel became aware of Mitchell's numerous confessions to hospital staff, case workers, and investigators, and despite Mitchell's assertion that he embellished his confessions, counsel was fearful of Mitchell perjuring himself should he go to trial. *See Brewer v. State*, 444 N.W.2d 77, 83 (Iowa 1989) ("[W]e will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail.").

Key to Mitchell's decision to plead guilty was his desire to avoid a potentially longer "sentence" away from his family if he were to assert an insanity defense and, if successful, be civilly committed. For that reason, his trial counsel did not pursue an insanity or diminished capacity defense. Therefore, with Mitchell making the decision to not pursue such a defense, he cannot now claim his trial

counsel breached an essential duty in not pursuing an insanity defense for which counsel would then need to obtain a mental evaluation or review medical records.

Moreover, trial counsel testified he met with Mitchell and observed his mental state first-hand. Mitchell told him he was doing much better, while in custody, after having his medications properly adjusted. Trial counsel then testified he had no concerns about Mitchell's capacity or competency to understand the plea proceedings, what he was pleading to and the potential consequences of the court accepting the plea. Counsel testified he left the decision whether to plead guilty to Mitchell, then focused efforts on obtaining a favorable plea offer, which he did. As the State notes, Mitchell has not offered any evidence that would establish a more thorough investigation by trial counsel would have uncovered hidden exculpatory evidence that might have impacted Mitchell's decision whether to plead guilty or go to trial.

In its ruling, the PCR court specifically noted it found trial counsel more credible than Mitchell on events related to the criminal case, including the level of investigation into the merits of the case and counsel's deference to allowing Mitchell to make the final decision as to whether to enter a plea or proceed to trial. *See Taylor v. State*, 352 N.W.2d 683, 687 (Iowa 1984) (giving weight to the court's findings of witness credibility). Therefore, Mitchell has failed to show either a breach of his counsel's duty or that he was prejudiced by counsel's performance. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

### C. Confessions

Mitchell next contends his trial counsel provided ineffective assistance because he did not file a motion to suppress Mitchell's alleged involuntary

confessions. Mitchell asserts he was encouraged and persuaded to confess by a nurse because the nurse indicated it would be better for Mitchell's family if he confessed. Mitchell also claims his mental instability contributed to his many involuntary confessions.

Upon our review of the record, we conclude Mitchell has failed to prove his counsel was ineffective in failing to file a motion to suppress. Although Mitchell alleged in his affidavit in support of his application for postconviction relief that a nurse coerced him into confessing, this alleged coercion is not a part of the minutes of evidence, and none of the witnesses listed would have testified to the alleged coercion. In addition, Mitchell focuses his claim of coercion on his confession to the nurse and ignores the numerous other confessions he made to law enforcement and DHS staff, including Mitchell's confession to Officer Peiffer after the officer stated he could not promise help or leniency. The record does not support the idea that Mitchell was coerced in any way when he made his multiple confessions.

In addition, the record does not support Mitchell's claim that his mental instability contributed to his confessions. During the initial investigation, Mitchell clearly understood the gravity of the allegations against him and their potential consequences. The minutes of testimony state:

> While Officer Peiffer and DHS worker Jones were obtaining the search warrant, the defendant called Jones in front of Officer Ronald DeWitt who was stationed at the home pending the warrant. The defendant stated that he was a sex addict who masturbates at least once every day. That there is a room in the basement where all of his pornography is at and he advised that there would be DNA all over the floor of that room. At no time did Officer DeWitt ask the defendant any questions in reference to this investigation, he was there just to detain and secure the premises until a warrant would be

obtained. At the conclusion of the search warrant execution, the defendant asked Investigator Peiffer what he could do to avoid jail time. Officers believed this to be an odd question because he hadn't been charged with anything and in a very short period of time went from proclaiming his innocence to asking how he could avoid jail time.

Trial counsel's review of discovery and each confession revealed the essential part of the confession was consistent each time it was stated. The numerous, consistent confessions indicate Mitchell's mental capacity was not diminished at the time each confession was made. The record reflects Mitchell was concerned about the length of time he could face if incarcerated or involuntarily committed and he made voluntary confessions in an effort to minimize his sentence. Therefore, Mitchell's trial counsel was not ineffective in failing to file a motion to suppress.

## IV. Excluded Exhibits

Finally, Mitchell asserts the PCR court erred when it excluded exhibits Mitchell sought to introduce from Drugs.com, a website listing information on prescription drugs. In excluding the exhibits, the PCR court stated it believed they were being offered to show the possible side effects of certain prescription medication but there were no nurses or doctors available for cross-examination as to how Mitchell may or may not have been affected by the medication he was taking. Therefore, the PCR court ruled the exhibits were inadmissible because they contained hearsay.

For the first time on appeal, Mitchell asserts Iowa Rule of Evidence 5.803(17) provides an exception to the rule against hearsay for market reports. *See State v. Heuser*, 661 N.W.2d 157, 164-65 (Iowa 2003) (admitting labels from

boxes of cold medication under "market report" exception to hearsay rule). Since the PCR court did not rule on the exception, Mitchell has failed to preserve error. Mitchell alternatively asserts his PCR counsel was ineffective in failing to assert the exception. Because the ordinary rules of error preservation do not apply to claims of ineffective assistance of counsel, we may proceed to evaluate his claim. *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).

Upon our review of the record, we conclude Mitchell was not prejudiced by PCR counsel's failure to assert the market report exception. *See Ledezma*, 626 N.W.2d at 142 ("[B]oth elements [of an ineffective-assistance claim] do not always need to be addressed. If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney preformed deficiently."). The documents Mitchell sought to introduce list general information and a number of side effects a person might experience when taking risperidone. The State argues, and we agree, that a person prescribed this drug may not experience all or any of the side effects listed. Further, the listed information is not specific to Mitchell and does not contain any name brand associated with risperidone that would generally be trusted by the public. *See Heuser*, 661 N.W.2d at 164-65. Moreover, nothing in the plea proceeding record suggests the medication risperidone was affecting Mitchell's ability to give a voluntary and intelligent plea. With each question propounded by the court, Mitchell coherently responded and provided a factual basis for his plea.

At the sentencing hearing, Mitchell stated he recalled entering the plea and had no reason to believe the sentence should not be pronounced. The PCR court found Mitchell was competent to enter his guilty plea and while he did experience

bouts of anxiety while in custody, the record does not support a finding that he experienced any of the side effects listed in the Drugs.com proffered exhibits at the time of his guilty plea.

## V. Conclusion

Because trial counsel did not breach an essential duty in investigating Mitchell's case, in failing to pursue a suppression of his confessions, or by allowing Mitchell to plead guilty, and because Mitchell was not prejudiced by PCR counsel's failure to assert the "market record" exception to the hearsay rule, Mitchell's ineffective-assistance claims fail, and we affirm.

**AFFIRMED.**