# IN THE COURT OF APPEALS OF IOWA

No. 18-0672
Filed December 18, 2019

**TERRY DANIELS,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

The applicant challenges the denial of his application for postconviction relief. **REVERSED AND REMANDED FOR NEW TRIAL.**

Lanny M. Van Daele of Van Daele Law, LLC, North Liberty, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

Terry Daniels challenges the denial of his application for postconviction relief (PCR), following his 2014 convictions for possession of or conspiracy to possess more than fifty grams of cocaine base with the intent to deliver and failure to possess a drug tax stamp. As he did before the PCR court, Daniels[1] claims he received ineffective assistance from trial counsel when counsel failed to 1) object to incomplete jury instructions on aiding and abetting and 2) challenge the two amendments to the trial information. Daniels also claims he received ineffective assistance from his direct appeal counsel, maintaining counsel should have challenged the district court's ruling there was sufficient evidence to include Latasha Daniels as a co-conspirator in the marshalling instruction. In his pro se brief,[2] Daniels joins the arguments made by counsel and also argues 1) trial counsel was ineffective for allowing him to waive his right to be tried within one year after the one-year deadline had already passed, 2) there was insufficient evidence to support the alternative theories presented to the jury, and 3) the verdict against him was not unanimous.

---

[1] We refer to the defendant by his last name; any reference to "Daniels" is a reference to Terry Daniels. Others who share Daniels's last name are referred to by their first name.

[2] Daniels filed both a supplemental pro se brief and reply brief. We consider them as part of his appeal because this matter was already pending when Iowa Code section 814.6A took effect on July 1, 2019. *See State v. Macke*, 933 N.W.2d 226, 236 (Iowa 2019) (concluding the amendments to Iowa Code section 814.6 and 814.7 apply only prospectively—to appeals filed after the law took effect on July 1); *State v. Purk*, No. 18-0208, 2019 WL 5790875, at *7 n.8 (Iowa Ct. App. Nov. 6, 2019) (applying the reasoning of *Macke* and concluding section 814.6A "does not apply to this appeal, which was filed prior to July 1, 2019").

**I. Background Facts and Proceedings.**[3]

Waterloo police officers were investigating the distribution of crack cocaine, and they received information that a quantity of the drug would be arriving by bus from Chicago on January 6, 2013. Surveillance was set up in several locations, including the bus terminal. Officers observed Derrick Daniels get off the bus from Chicago with a black duffel bag. He entered a vehicle driven by his cousin, Latasha Daniels. The car was subsequently pulled over, and plastic bags containing approximately sixty-nine grams of crack cocaine were located in the black duffle bag.

Officers also had two residential addresses under surveillance at the time. Prior to Derrick arriving on the bus, police observed Latasha leave a home located at 1223 Mulberry. Shortly after Latasha picked up Derrick at the bus station, police observed Daniels leave his residence at 868 Fowler along with his long-term girlfriend, Mary Frye, and an unknown male, and drive in the direction of 1223 Mulberry. His vehicle was also stopped, and officers returned to the Fowler address with Mary to execute a search warrant.

At the Fowler residence, police located a receipt for a money transfer from Mary to Derrick and a car rental agreement. One of the officers testified it is common to find car rental agreements during narcotics investigations as drug traffickers will use rental cars in order to conceal their identity from officers. Traffickers will also often use the name and identity of one of their customers in order to further conceal their identity. The car rental agreement found at the

---

[3] We adopt the facts as laid out in the opinion on Daniels's direct appeal to explain the underlying criminal action. *State v. Daniels*, No. 14-1480, 2015 WL 9450636, at *1–2 (Iowa Ct. App. Dec. 23, 2015).

Fowler residence listed the name of an individual that the officer knew to be a crack-cocaine user. Officers located a letter addressed to Latasha, who is Daniels's daughter, with the Fowler address along with a letter addressed to Daniels. The officers also located a box of sandwich baggies in the kitchen and a receipt for a money gram from Latasha. A canine officer alerted to a nightstand in the upstairs bedroom, though no narcotics were found.

Officers also executed a search warrant at the Mulberry residence. Officers found two digital scales, razor blades, and sandwich baggies, all indicating drugs were weighed and packaged into individual units for resale in the residence. A prescription pill bottle with Derrick's name on it was located in a shoe in a closet. Mail containing Latasha's name with the Mulberry residence address and the Fowler address was also located in the Mulberry home.

At the police station, Officer Nicholas Berry interviewed Daniels, who told the officer he had a source in Chicago supplying him with crack cocaine. (The recording system in the interview room where Officer Berry interviewed Daniels malfunctioned. Officer Berry's testimony is the only evidence of Daniels's confession.) Daniels admitted the crack cocaine Derrick and Latasha were caught with was the result of an arrangement he had made with his source in Chicago. He told Officer Berry he was paying $1300 per ounce and receiving two ounces at a time, three times a month. Officer Berry testified that one ounce of crack cocaine is a little more than twenty-eight grams, making the total amount of crack cocaine seized that day equal to approximately two and one-half ounces. Officer Berry testified the amount of cocaine base discovered in the vehicle was consistent with distribution and not consistent with personal use.

Another officer also testified Daniels gave the Mulberry address as his own when he was booked into jail.

In his defense at trial, Daniels called Derrick to testify. Derrick stated Daniels had nothing to do with the drugs found in his possession on January 6. While Derrick testified he took full responsibility for the drugs, on cross-examination Derrick also stated he was "shocked" when the police officer removed the drugs from the duffle bag. While he was carrying the bag, he told police it did not belong to him and pointed out in his testimony that the bag contained clothing that was not his and contained Latasha's wallet and identification. However, he ultimately admitted to knowing the drugs were in the duffle bag. He also admitted to owning the digital scales found during the search of the Mulberry address. At the time of Daniels's trial, Derrick had already been tried and convicted for possessing the cocaine base and was awaiting sentencing.

The jury found Daniels guilty of possession of, or conspiracy to possess, over fifty grams of cocaine base and failure to have a drug tax stamp. Daniels admitted to being a subsequent offender and was originally sentenced to ninety years in jail with a one-third mandatory minimum. Following a hearing on a motion for reconsideration, Daniels was resentenced to a term of imprisonment not to exceed fifty years with a one-third mandatory minimum.

Daniels filed a direct appeal of his conviction, in which he challenged the sufficiency of the evidence and maintained his trial counsel provided ineffective assistance in a number of respects. The supreme court transferred the case to us, and a panel of our court affirmed. *See Daniels*, 2015 WL 9450636, at *12.

Daniels filed his application for PCR in 2016. He raised a number of clams, including that trial counsel breached an essential duty by failing to object to improper jury instructions Specifically, Daniels argued he was prejudiced by the failure of the aiding and abetting instruction to include the necessary specific intent language, informing the jury that, because possession with intent to deliver is a specific intent crime, Daniels could only be guilty by way of aiding and abetting if either Daniels had specific intent to deliver the drugs or had knowledge the others who directly committed the crime had such specific intent.

Shortly thereafter, Daniels filed a motion for summary judgment, asserting the facts at issue were not in dispute and asking the PCR court to decide his application on the underlying criminal file and legal arguments presented. The State resisted, arguing Daniels had failed to establish undisputed facts that entitled him to judgment as a matter of law and noting this court had preserved a number of claims of ineffective assistance made by Daniels on direct appeal as the record needed to be further developed in order to decide the issues.

A hearing on Daniels's motion for summary judgment took place in May 2017. In a written ruling, the district court reached the merits of Daniels's claim trial counsel breached an essential duty in failing to object to the incomplete aiding and abetting instruction, concluding counsel did not breach a duty and Daniels did not establish that he suffered prejudice. The court denied Daniels's motion for summary judgment.

Daniels filed a motion to reconsider with the district court; the State resisted.

While awaiting an answer from the district court, Daniels filed an application for interlocutory appeal to the supreme court, which the supreme court denied.

The district court denied Daniels's motion to reconsider its ruling on summary judgment.

Daniels filed a pro se motion he entitled, "motion requesting argument(s) briefing in place of an evidentiary trial." In his motion, Daniels requested "'just' merits briefing. That the court set a schedule on which to proceed and then issue a ruling." The State resisted. The court originally denied the motion but, upon Daniels's motion to reconsider, set a hearing on the motion.

At the hearing, Daniels reiterated that he did not want an evidentiary hearing on his PCR application. The court ruled the evidentiary hearing could be waived and the parties would be allowed to proceed with submission of the case on trial briefs. Daniels filed a pro se brief, and his attorney filed an additional supplemental brief. The State rested on its previous arguments and filings.

The court filed a written ruling denying Daniels's PCR application. The court concluded that while the aiding and abetting instruction failed to included specific intent language, the marshalling instruction "essentially provides the language Daniels claims was erroneously omitted" from the aiding and abetting instruction. Because instructions are to be read as a whole, the court concluded Daniels's trial counsel did not breach an essential duty. Additionally, the court concluded that even if counsel breached a duty, Daniels could not establish prejudice because "the strength of the State's case was such that Daniels failed to establish a reasonable probability the result would have been different."

Daniels appeals.

## II. Standard of Review.

We generally review PCR proceedings for correction of errors at law, but when the applicant alleges ineffective assistance, we review de novo. *See Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III. Discussion.

On appeal, Daniels claims he received ineffective assistance from trial counsel when counsel failed to 1) object to incomplete jury instructions on aiding and abetting, 2) challenge the two amendments to the trial information, and 3) prevent Daniels from waiving his right to be tried within one year after the one-year deadline passed. He also claims he received ineffective assistance from his direct appeal counsel, arguing counsel should have challenged the district court's ruling there was sufficient evidence to include Latasha Daniels as a co-conspirator in the marshalling instruction. Additionally, Daniels complains there was insufficient evidence to support the alternative theories of the commission of the crime presented to the jury and the verdict against him was not unanimous.

To succeed on a claim of ineffective assistance, Daniels has the burden to prove (1) his trial counsel failed to perform an essential duty and (2) he was prejudiced by this failure. *See Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011). To prove counsel failed to perform an essential duty, Daniels "must show that counsel's performance was deficient" meaning his attorney committed errors so serious that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We measure effective performance by determining "whether counsel's assistance

was reasonable considering all the circumstances." *See id.* at 688. To prove prejudice, Daniels must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To show a reasonable probability the result would have been different, he must demonstrate the probability of a different result is enough to undermine our confidence in the outcome. *See Bowman v. State*, 710 N.W.2d 200, 206 (Iowa 2006) (quoting *State v. Graves*, 668 N.W.2d 860, 882–83 (Iowa 2003)).

The State agrees possession of a controlled substance with an intent to deliver is a specific intent crime. When specific intent is an element of the crime charged, a person may be convicted on a theory of aiding and abetting only if that person participated while possessing the required intent or with knowledge the principal actor had the required intent. *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000). In such instance, the jury instruction on aiding and abetting should include the following paragraph:

> The crime charged requires a specific intent. Therefore, before you can find the defendant "aided and abetted" the commission of the crime, the State must prove the defendant either has such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the defendant did not have the specific intent, or knowledge the others had such specific intent, [he] [she] is not guilty.

Iowa Crim. Jury Instruction 200.8. Here, the trial court did not include this language as part of the aiding and abetting jury instruction and Daniels's trial counsel did not object to the omission. Daniels maintains counsel breached an essential duty by failing to object to the incomplete instruction. This is not the first time our court has been asked to consider this issue.

In *Burton*, the defendant and two of her friends reported they were going to "beat the ass" of a woman the defendant believed was "fooling around" with her boyfriend. *State v. Burton*, No. 12-2223, 2013 WL 5760635, at *1 (Iowa Ct. App. Oct. 23, 2013). That same night, the defendant and her two friends went to the hotel where the woman worked; while the defendant stayed in the car, the two friends went in, announced, "We're not here for room rates, we're here to fuck you up for [the defendant]," and assaulted the woman—throwing things at her, pulling her hair, hitting her, and, once she fell to the ground, kicking her. *Id.* Once the two friends stopped and exited the hotel, the woman followed them outside. *Id.* When she saw the defendant, she asked, "Why would they have done to this to me?" *Id.* The defendant told her, "You've already got your ass beat enough. Do you want me to beat your ass more? Just leave already. Back off." *Id.* The defendant was charged with willful injury causing bodily injury (a specific intent crime), and the State prosecuted her under the theory of aiding and abetting. *Id.* The jury instruction on aiding and abetting did not include the specific intent language, and, on appeal, the defendant argued she received ineffective assistance from counsel for failing to object to the incomplete instruction. *Id.* at *4. Our court determined counsel breached an essential duty by failing to object the incomplete instruction on aiding and abetting. *Id.* at *5. The State argued prejudice could not be shown because rational jurors would infer that the defendant specifically intended to cause a serious injury to the woman and used her two friends to accomplish that intention. *Id.* Our court disagreed, concluding that while rational jurors could reach that conclusion, "[r]ational jurors also could have rejected such an inference, finding the violence

perpetrated by [the friends] exceeded [the defendant's] intent when she aided and abetted their assault on" the woman. *Id.* Because the failure to properly instruct the jury undermined the court's confidence in the verdict, it ruled the defendant had received ineffective assistance and reversed her conviction. *Id.* at *5.

Similarly, in *Vinsick*, the defendant was charged with forgery—a specific intent crime. *State v. Vinsick*, No. 17-1344, 2018 WL 3472043, at *1 (Iowa Ct. App. July 18, 2018). The defendant was a passenger in a van at the time the driver of the van attempted to deposit a forged check. *Id.* The driver gave a statement to police that he had been given the check earlier that morning by the defendant's friend while at the defendant's home. *Id.* at *2. The driver and the defendant were tried jointly; the State prosecuted the defendant under the theory he aided and abetted the driver in committing forgery. *Id.* at *4. On appeal, the defendant claimed he received ineffective assistance because trial counsel did not challenge the jury instruction on aiding and abetting for its failure to include the specific intent language. *Id.* at *5. The State conceded trial counsel breached an essential duty but maintained the defendant could not establish prejudice because the evidence of his guilt was overwhelming. *Id.* at *6. This court disagreed, finding that while a rational juror could infer the defendant had the specific intent to participate in the forgery, the jury could also have concluded that even if the defendant knew the driver was engaging in the crime of forgery, he did not participate, advise, or encourage the driver to do so. *Id.* The court reversed the defendant's conviction for ineffective assistance. *Id.*

The State maintains, and the PCR court agreed, that Daniels's case is different than those in which our court reversed the defendant's conviction for ineffective assistance. In Daniels's case, while the specific intent language was missing from the aiding and abetting instruction, the marshalling instruction required:

> The State must prove all of the following elements of possession of a controlled substance, to-wit: cocaine base with the intent to deliver:
>
> 1. On or about January 6, 2013, [Daniels] knowingly possessed cocaine base or aided and abetted another person's possession of cocaine base.
> 2. [Daniels] knew that the substance he possessed or aided and abetted another person in possessing was cocaine base.
> 3. [Daniels] possessed the substance *with the intent to deliver a controlled substance or had knowledge the person [Daniels] aided and abetted had the intent to deliver a controlled substance*

(Emphasis added).

We recognize that jury instructions are to be read together. *See, e.g.*, *Sanders v. Ghrist*, 421 N.W.2d 520, 522 (Iowa 1988) ("All instructions must be read and construed together, not piecemeal or in artificial isolation."). But even reading the language of the marshalling instruction in concert with the instruction on aiding and abetting does not solve the problem. The marshalling instruction does not inform the jury it must find *specific* intent. Instead, it generally requires them to find Daniels possessed the substance with the intent to deliver or knew the principal actor had intent to do so. *See* Iowa Crim. Jury Instruction 200.8 ("[T]he State must prove the defendant either has such *specific intent* or 'aided and abetted' with the knowledge the others who directly committed the crime had such *specific intent*. If the defendant did not have the specific intent, or

knowledge the others had such specific intent, [he] [she] is not guilty." (emphasis added)). Therefore, we conclude counsel breached an essential duty in failing to object to the instructions. And like *Burton* and *Vinsick*, our confidence in the outcome of the trial is undermined by such, so Daniels has been prejudiced by counsel's failure.[4]

Because we are convinced Daniels's first claim requires that he receive a new trial, we only consider his other PCR claims insofar as they are necessarily implicated by or may arise during retrial. *See State v. Dudley*, 766 N.W.2d 606, 615 (Iowa 2009) ("Although the judgment against [the defendant] must be reversed, we will address the other issues in this appeal that are likely to arise upon remand."). We consider Daniels's claim of ineffective assistance involving whether his waiver of being tried within one year occurred outside the contemplated timeframe because, if meritorious, the proper remedy is dismissal of the charges against Daniels rather than a new trial.[5] *See Ennenga v. State*, 812 N.W.2d 696, 709 (Iowa 2012).

---

[4] In *State v. Bergstrom*, No. 13-0144, 2014 WL 956068, at *3–5 (Iowa Ct. App. Mar. 12, 2014), this court found trial counsel breached an essential duty in failing to challenge the incomplete jury instruction on aiding and abetting but concluded the defendant was not prejudiced. In that case, there was video evidence showing the defendant personally participating in the third degree theft. *Bergstrom*, 2014 WL 956068, at *3–4. We noted it was "not a typical aiding and abetting case where the defendant was merely present at a crime scene with another and there is a real question whether the defendant had the specific intent to commit a theft—the 'wrong place at the wrong time' or 'guilty by association' cases." *Id.* at *4.

[5] We recognize that Daniels also challenges the sufficiency of the evidence and know that a meritorious claim regarding insufficient evidence would also require the dismissal of the charges against him. *See State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). But Daniels already challenged the sufficiency of the evidence in his direct appeal, and our court determined the evidence was sufficient to support his conviction. *Daniels*, 2015 WL 9450636, at *3–4. "Our decision on direct appeal is . . . final to all issues decided therein, and is binding upon both the postconviction court and this court in subsequent appeals. [Daniels] cannot now relitigate issues decided adversely to him on

Daniels argues counsel provided ineffective assistance when counsel allowed him to waive his right to be tried within one year after the deadline rather than filing a motion to dismiss. Iowa Rule of Criminal Procedure 2.33(2) provides:

> It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties. Applications for dismissals under this rule may be made by the prosecuting attorney or the defendant or by the court on its own motion.
> . . . .
> c. All criminal cases must be brought to trial within one year after the defendant's initial arraignment pursuant to rule 2.8 unless an extension is granted by the court, upon a showing of good cause.

Daniels's argument is based on a misunderstanding of the rule. He complains his waiver was untimely because when it was made on January 10, 2014, it had been more than one year from when he was arrested on January 6, 2013. *See State v. Elder*, 868 N.W.2d 448, 453 (Iowa Ct. App. 2015) (noting that while the rule does not expressly contemplate it, "because the right to a speedy trial is personal to a defendant a defendant may waive the right to trial within one year"). But the one-year deadline is calculated by date of arraignment, which in this case took place on January 30, 2013. Because it was still within the appropriate window, counsel did not breach an essential duty in allowing Daniels to waive his right to be tried within one year.

**IV. Conclusion.**

Because trial counsel breached an essential duty in failing to object to incomplete jury instructions and Daniels was prejudiced by it, we reverse his

---

direct appeal." *Holmes v. State*, 775 N.W.2d 733, 735 (Iowa Ct. App. 2009). We do not consider his renewed challenge to the sufficiency of the evidence.

conviction for possession of or conspiracy to possess more than fifty grams of cocaine base with the intent to deliver.  We remand for new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**